1 | HOLLAND & KNIGHT LLP
LINDA AUERBACH ALLDERDICE (SBN 81275)
2 | TIMOTHY M. FISHER (SBN 272392)
400 South Hope Street, 8th Floor
3 | Los Angeles, California 90071
Telephone (213) 896-2400
4 | Facsimile  (213) 896-2450
Email:   linda.allderdice@hklaw.com
5 |        timothy.fisher@hklaw.com

6 | HOLLAND & KNIGHT LLP
ADANNA M. LOVE (SBN 280538)
7 | 50 California Street, Suite 2800
San Francisco, California 94111
8 | Telephone (415) 743-6954
Facsimile  (415) 743-6910
9 | Email:   adanna.love@hklaw.com

10 | Attorneys for Defendant
CAPITAL CONTRACTORS, INC.

11 |

12 |               UNITED STATES DISTRICT COURT

13 |          FOR THE NORTHERN DISTRICT OF CALIFORNIA

14 |                  SAN FRANCISCO DIVISION

15 |

16 | LILLIANA SANCHEZ, YOLANDA    ) Case No. CV-14-2622
CAMEY, JUAN CARLOS RAMIREZ, JOSE )
17 | ANTONIO HERNANDEZ, JUAN CARLOS )  **DEFENDANT CAPITAL CONTRACTORS,**
HERNANDEZ, JOSE ALFARO, IRMA  )  **INC.'S NOTICE OF REMOVAL OF CIVIL**
18 | GONZALEZ AGUILAR, LUCINDA     )  **ACTION TO FEDERAL COURT**
CALINDO, individually, and on behalf of )
19 | other members of the general public similarly )  **[28 U.S.C. §§ 1332, 1441, 1446 and 1453]**
situated,                         )
20 |                              )  **[DECLARATION OF JOANN LOMBARDI**
                Plaintiff,        )  **FILED IN SUPPORT OF DEFENDANT'S**
21 | v.                            )  **NOTICE OF REMOVAL OF THIS CIVIL**
                                 )  **ACTION TO FEDERAL COURT IS FILED**
22 | CAPITAL CONTRACTORS INC., a New )  **CONCURRENTLY HEREWITH]**
York Corporation which will do business in )
23 | California as, CAPITAL BUILDING )
MAINTENANCE SERVICES INC; and )
24 | DOES 1-30, inclusive, DOES 1 to 30, )
inclusive,                        )
25 |                              )
                Defendants.       )
26 |                              )
                                 )
27 | _____

28 |

_____
Defendant Capital Contractors, Inc.'s Notice of Removal of Civil Action to Federal Court

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that Defendant CAPITAL CONTRACTORS, INC. ("Capital" or "Defendant") hereby removes the above-captioned action from the Superior Court in the State of California, County of San Mateo, to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1332(a), 1332(d), 1441 and  1446(b) , and 1453(b) on the following grounds:

## STATEMENT OF JURISDICTION

1.     This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA") because this is a class action in which the number of members of the proposed classes exceeds 100, one or more members of the plaintiff classes are citizens of California and Defendant is a citizen of New York (incorporated in New York with its principal place of business (its headquarters) in Melville, New York), and the amount in controversy exceeds $5 million, exclusive of interest and costs.  28 U.S.C. § 1332 (d).

2.     As set forth below, this case meets all of the requirements of 28 U.S.C. §§ 1332(a) and (d) for removal, and is timely and properly removed by the filing of this Notice of Removal.

## VENUE

3.     The action was filed in the Superior Court of California in and for the County of San Mateo.  Accordingly, venue properly lies in the United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§ 84(a), 1391(a), and 1441(a).

## PLEADINGS, PROCESS AND ORDERS

4.     The action is a civil action and a class action within the meaning of the Acts of Congress relating to removal of cases.  28 U.S.C. § 1453.

5.     On or about April 25, 2014, Lilliana Sanchez, Yolanda Camey, Juan Carlos Ramirez, Jose Antonio Hernandez, Juan Carlos Hernandez, Jose Alfaro, Irma Gonzalez Aguilar, and Lucinda Calindo, purportedly on behalf of themselves and other similarly situated potential class members, filed a complaint in the Superior Court of California in and for the County of San Mateo, captioned *Lilliana Sanchez, Yolanda Camey, Juan Carlos Ramirez, Jose Antonio Hernandez, Juan Carlos*

Defendant Capital Contractors, Inc.'s Notice of Removal of Civil Action to Federal Court

*Hernadez, Jose Alfaro, Irma Gonazalez Aguilar, and Lucinda Calindo, individually, and on behalf of other members of the general public similarly situated v. Capital Contractors Inc., a New York Corporation which will do business in California as, Capital Building Maintenance Services Inc.; and DOES 1-30, inclusive, DOES 1 to 30, inclusive [sic],* in Case No. CIV 528210 (herein referred to as the "Complaint").

6.     On May 8, 2014, Plaintiffs served a copy of the Summons and Complaint on the registered agent for Defendant.

7.     A true and correct copy of the Complaint, Summons with proof of service, Civil Case Cover Sheet, Notice of Complex Case Status Conference with fee paid, Notice of Case Management Conference, Certificate Regarding Complex Case Designation with proof of service are attached collectively hereto as Exhibit A. To Defendant's knowledge, those are all of the process, pleadings, and orders related to this case that have been filed to date in San Mateo County Superior Court.

8.     Defendant is a nationwide cleaning contractor for commercial and industrial facilities. Defendant enters into subcontracts with local cleaning contractors in various states, including California, to perform the cleaning services.  Those independent contractors in turn hire their own workers to perform the services under their independent contractor agreements with Defendant.

9.     As alleged in the Complaint, the three putative classes Plaintiffs purport to represent are:

a.     Class I, California-based Independent Contractors ("ICs"): All persons who have been (a) employed by Capital in the State of California, and (b) misclassified as an "independent contractor" by Capital to perform cleaning services at Capital's clients' properties on behalf of Capital. Compl. ¶ 60.

b.     Class II, California-based, hourly rate janitorial workers ("JWHs"): All persons who have (a) performed the labor of cleaning Capital's clients' properties, on behalf of Capital, in the State of California and (b) received an hourly rate of pay in connection with performing the labor of cleaning Capital's clients' properties on behalf of Capital. *Id.*

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

c.      Class III, California-based, flat rate janitorial workers ("JWFs"): All persons who have (a) performed the labor of cleaning Capital's clients' properties, on behalf of Capital, in the State of California and (b) received a flat rate of pay in connection with performing the labor of cleaning Capital's clients' properties on behalf of Capital. *Id.*

In the Complaint, Plaintiffs refer to JWHs and JWFs collectively as JWs.

10.     The Complaint sets forth 13 purported causes of action for: (1) Violation of California Labor Code §§ 226.8 and 2698, *et seq.* (Misclassification as Independent Contractors and Private Attorney General Act ("PAGA")); (2) Violation of California Labor Code §§ 432.5 and 2698, *et seq.* (Unlawful Terms and Conditions and PAGA); (3) Violation of California Labor Code §§ 2802 and 2698, *et seq.* (Failure to Indemnify for Expenses and Losses in Discharging Duties and PAGA); (4) Violation of California Labor Code §§ 221, 224, 1198, 2698, *et seq.*, IWC Wage Order "Hours and Days of Work" and "Minimum Wage" sections (Unlawful Deductions, Repayment of Wages and Secret Underpayment of Wages and PAGA); (5) Violation of California Labor Code §§ 510, 1198, 2698, *et seq.* (Failure to Pay Overtime Wages and PAGA); (6) Violation of California Labor Code §§ 226.7, 512 and IWC Wage Order "Meal Periods" section (Failure to Provide Meal Periods and PAGA); (7) Violation of California Labor Code §§ 226.7 and IWC Wage Order "Rest Periods" section (Failure to Provide Rest Periods and PAGA); (8) Violation of California Labor Code §§ 1197, 1198, 2698, *et seq.* and IWC Wage Order "Minimum Wage" section (Failure to Pay Minimum Wages and PAGA); (9) Violation of California Labor Code §§ 226, 1174, 1198, 2698, *et seq.* and IWC Wage Order "Records" section (Failure to Provide and Maintain Accurate Itemized Wage Statements and PAGA); (10) Violation of California Labor Code §§ 204, 1198, 2698, *et seq.* and IWC Wage Order (Failure to Pay Timely Wages During Employment and PAGA); (11) Violation of California Labor Code §§ 201, 202, 203, 2698, *et seq.* and IWC Wage Order (Failure to Pay Wages Due Upon Termination and PAGA); (12) Violation of California Civil Code §§ 1709-1710 (Negligent Misrepresentation); and (13) Violation of California Business & Professions Code §§ 17200, *et seq.* (Unfair Business Practice).

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

## THE REMOVAL IS TIMELY

11.    Defendant timely removed this action within 30 days of service of the Complaint. Plaintiffs served the registered agent for Defendant on May 8, 2014.  Because this Notice of Removal is filed within 30 days of service of the Complaint on the Defendant, it is timely under 28 U.S.C. §§ 1446(b) and 1453.  *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).  No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

## THE CLASSES NUMBER MORE THAN 100 MEMBERS

12.    Plaintiffs bring this action as a purported class action under the California Code of Civil Procedure, section 382.  The Complaint alleges that each of the proposed classes includes hundreds of members and that membership in Classes II and III could number into the thousands. Compl. ¶ 62.  The Complaint further alleges that Defendant "employed Plaintiffs and class members – hundreds of ICs and thousands of JWs – and relied on them to provide cleaning services for its clients throughout California."  Compl. ¶ 22.

## PLAINTIFFS' CITIZENSHIP IS DIVERSE FROM DEFENDANT'S CITIZENSHIP

13.    In order to satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exits, that is, that one putative class member is a citizen of a state different from that of one defendant.  28 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010).

### Plaintiffs and Members of all Putative Classes Are Citizens of California

14.    While Plaintiffs do not allege in so many words the state in which they are citizens, they do allege facts from which it is clear that they are citizens of California.  The Plaintiff classes are alleged to consist of current as well as former employees of Defendant who clean buildings in California. Compl. ¶¶ 93, 102, 105, 115, 130, 135, 142, 153, 163, 175, 185, 191, 198, 103, 113, 221, 222 ("the illegal conduct alleged herein is continuing"), Prayer ¶ b (seeking injunctive relief). For example, they allege they worked in California (*id.* ¶¶ 9, 13-20), that all Plaintiffs and class

members are "California-based" (*id.* ¶¶ 23, 60), and that all Plaintiffs and class members are employed by Defendant in California to clean Defendant's clients' properties in California (*id.* ¶¶ 22, 60). Indeed, all members of Class I allegedly were required to "remain on-call twenty-four (24) hours per day, three hundred sixty five (365) days per year" (*id.* ¶ 28)—a feat that would have been impossible unless they were domiciled in California. Moreover, all of the named ICs' company offices are located in California: Hernandez Cleaning Service, 483 Massar Avenue, San Jose CA, 95116; Hernandez Janitorial Service, 483 Massar Avenue, San Jose CA, 95116; JCR Janitorial, 278 Chopin Avenue, San Jose, CA 95122; Professional CCS Cleaning Service, 932 Ellsworth Street, San Francisco, CA 94110. Declaration of Joann Lombardi filed in Support of Defendant's Notice of Removal of this Civil Action to Federal Court ("Lombardi Decl.") ¶ 16. Moreover, all independent contractors presently working for Capital in California are not located in New York. *Id.* Plaintiffs are and have been citizens of the State of California. Of importance for diversity purposes, Plaintiffs obviously are not citizens of New York working in California on a daily basis.

<u>The Defendant is a Citizen of New York</u>

15.    The Complaint alleges there is one named defendant in this action: Capital Contractors, Inc. Compl., Initial ¶, ¶ 10. The other defendants are "fictitious" Doe defendants (*id.* ¶ 11), who are disregarded for purposes of determining diversity. 28 U.S.C. § 1441 (b)(1); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998); Gonzalez v. Target Corp., CIV. S-13-1615 KJM, 2013 WL 5554959 at *3 (E.D. Cal. Oct. 8, 2013) (*citing Soliman v. Philip Morris, Inc.*, 311 F.3d 966, 971 (9th Cir. 2002). The Complaint also alleges that Capital Contractors, Inc. does business as Capital Building Maintenance Services, Inc., but alleges that Capital Building Maintenance Services, Inc. is a doing-business-as name, not a separate legal entity. Compl., Initial ¶ ("Plaintiffs … bring this action against Defendant Capital Contractors Inc., dba Capital Building Maintenance Services Inc."), ¶ 10. Plaintiffs are correct that Capital Building Maintenance Services, Inc. is not a separate corporate entity from Capital Contractors, Inc. Lombardi Decl. ¶ 6. Capital Building Maintenance Services, Inc. is a d/b/a of Capital Contractors, Inc. (*id.* ¶ 5), is not registered as a separate entity in California, and does not exist anywhere separate and apart from Capital Contractors, Inc. *Id.* ¶ 6. Moreover, all contracts and leases are

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

entered into by Capital Contractors, Inc.; all bank accounts are based out of New York and are registered to Capital Contractors, Inc.; the building directory for Defendant's California office space lists Capital Contractors, Inc. as the tenant; all of the separate and independent subcontractors who enter into contracts with Capital to provide cleaning services are paid by Capital Contractors, Inc.; and all advertising in California uses the name Capital Contractors, Inc. *Id.* ¶ 7.

16.    For diversity purposes, a corporation "shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

17.    The Complaint correctly alleges that Defendant is a New York corporation. Compl. ¶ 10; *see Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (examining complaint and notice of removal for citizenship determination). Defendant is now, and prior to and after the commencement of this action on April 25, 2014, has been, incorporated in and existing under and by virtue of the laws of the State of New York. Lombardi Decl. ¶ 4.

18.    The Supreme Court has held that the "nerve center" test should be used to determine a corporation's "principal place of business." *See Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010).

19.    A corporation's "nerve center" is normally located where the corporation maintains its corporate headquarters and where the "corporation's officers direct, control, and coordinate the corporation's activities." *Id.* at 78. In other words, a corporation's "principal place of business" can be found where its "brain" is located. *Id.* at 95.

20.    Applying the above analysis, the principal place of business, or "nerve center," of Defendant is indisputably located in Melville, New York, where the headquarters of Defendant is located. The New York headquarters of Defendant is and at all relevant times has been the location of the majority of Defendant's corporate books and records and where the majority of its executive and administrative functions (including but not limited to operations, corporate finance, accounting, human resources, payroll, marketing, legal and information systems) are and have been performed. Lombardi Decl. ¶ 3. Its corporate officers (including but not limited to its chief executive officer, chief financial officer, and treasurer) work and at all relevant times have worked out of the New York headquarters, and its corporate activities have been directed, controlled and coordinated from

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

7

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

there. *Id.* Furthermore, all of Defendant's bank accounts are based in New York, and all independent contractors are paid from Defendant's bank accounts. *Id.* As such, Defendant's principal place of business and nerve center is New York. Accordingly, Defendant is a citizen of the State of New York for the purposes of determining diversity. 28 U.S.C. § 1332(c)(1); *Hertz*, 559 U.S at 91; *see also Breitman v. May Co.*, 37 F.3d 562, 564 (9th Cir. 1994) (corporation was citizen of state in which its corporate headquarters is located and where its executive and administrative functions are performed). Defendant is not now, and was not at the time of the filing of the Complaint, a citizen of the State of California within the meaning of the Acts of Congress relating to the removal of cases.

21. Accordingly, the named Plaintiffs are citizens of a State different from Defendant and, thus, diversity exists for purposes of CAFA jurisdiction. *See* 28 U.S.C. §§ 1332(d)(2)(A), 1453.

### DEFENDANT IS NOT A GOVERNMENTAL ENTITY

22. Defendant is not a state, state official, or other governmental entity. Defendant Capital Contractors, Inc. is a New York corporation, doing business in California as Capital Building Maintenance Services, Inc. Lombardi Decl. ¶¶ 4-5, 18; Compl. ¶ 10.

### THE AGGREGATE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000

23. This Court has jurisdiction under CAFA, which authorizes the removal of a class action in which, in addition to the other factors mentioned above, the amount in controversy for all class members exceeds $5 million. 28 U.S.C. § 1332(d).

24. The Complaint is silent as to the amount in controversy for the alleged class in the aggregate. Under CAFA, where a complaint fails to plead a specific amount of damages, the defendant seeking removal "must prove by a preponderance of the evidence that the amount in controversy requirement has been met." *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006); *Rodriguez v. AT&T Mobility Services LLC*, 728 F.3d 975 (9th Cir. 2013).

25. Because Defendant was not Plaintiffs' employer, it does not have access to all of the information necessary to make concrete damages calculations for every cause of action as to each class member. Lombardi Decl. ¶¶ 10, 11. Courts in the Ninth Circuit consider which party has

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

better access to information when deciding whether a damages calculation is sufficient for the purposes of removal. *See, e.g.*, *Ray v. Nordstrom Inc.*, 2:11-CV-07277-JHN, 2011 WL 6148668 (C.D. Cal. Dec. 9, 2011) (*citing Amoche v. Guarantee Trust Life Insurance Co.*, 556 F.3d 41, 51 (1st Cir. 2009) ("[d]eciding whether a defendant has shown a reasonable probability that the amount in controversy exceeds $5 million may well require analysis of what *both* parties have shown...In the course of that evaluation, a federal court may consider which party has better access to the relevant information.") (emphasis in original); *see also Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006) (reversing district court's remand to state court in CAFA case in part because "plaintiffs ha[d] better access to information about which plaintiffs [were] injured and their relationship to various defendants"); *Sierra v. Progressive Direct Ins. Co.*, 2012 WL 4572923 at *2 (D. Mass. Sept. 28, 2012) (denying plaintiff's motion to remand, emphasizing that plaintiff, not defendant, had "better access to information about which plaintiffs are injured and by how much").

26.     To meet its burden of proof, defendants are not required to "research, state, and prove the plaintiff's claims for damages." *Fong v. Regis Corp.*, C 13-04497 RS, 2014 WL 26996 at *2 (N.D. Cal. Jan. 2, 2014) (citations omitted).   A removing defendant meets its burden of showing CAFA's amount in controversy where its calculations "were relatively conservative, made in good faith, and based on evidence wherever possible." *See Id.* at *5 (*citing Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009).   Therefore, where it can, Defendant will make conservative, good faith calculations based on the allegations in the Complaint and any evidence Defendant can reasonably proffer.

27.     Defendants can establish the amount in controversy by assuming the allegations in the Complaint to be true or by setting forth facts in the Notice of Removal[1] that demonstrate that the amount in controversy "more likely than not" exceeds the jurisdictional minimum. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *Rippee v. Boston Mkt. Corp.*, 408 F.

---

[1] Defendant notes that the Supreme Court has granted certiorari in *Dart Cherokee Basin Operating Company, LLC v. Owens*, No. 13-719, to consider whether a defendant seeking removal to federal court is required to include evidence supporting federal jurisdiction, or whether it is enough to allege the required "short and plain statement of the grounds for removal" in the notice of removal, without a supporting declaration.  Here, Defendant includes a declaration supporting its Notice of Removal.

Defendant Capital Contractors, Inc.'s Notice of Removal of Civil Action to Federal Court

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

Supp. 2d 982, 984 (S.D. Cal. 2005) ("[T]he requirement under CAFA that the amount in controversy exceed $5,000,000 in the aggregate may be established either from the viewpoint of the plaintiff or the viewpoint of the defendant."). Thus, in addition to the contents of the removal petition, the Court properly considers evidence submitted by the Defendant such as affidavits or declarations, in assessing the amount in controversy. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).

28.     In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 1001 (C.D. Cal. 2002). The ultimate inquiry is what amount is put "in controversy" by the plaintiffs' complaint, not what a defendant will actually owe. *Rippee*, 408 F. Supp. 2d at 986; *see also Scherer v. Equitable Life Assurance Soc'y*, 347 F.3d 394, 399 (2d Cir. 2003).

29.     Defendant denies the validity and merit of all of Plaintiffs' claims, the legal theories upon which they are purportedly based, and the claims for monetary and other relief that flow from them. However, for purposes of removal only, and without conceding that Plaintiffs or the putative classes are entitled to any damages, civil or statutory penalties or other relief, it is readily apparent that the aggregated claims of the putative classes establish an amount "in controversy" in excess of the jurisdictional minimum of $5,000,000.

30.     The Complaint sets forth 13 purported causes of action. Those causes of action are listed in paragraph 10 of this Notice of Removal.

31.     As indicated above, Defendant subcontracts the cleaning of its clients' premises to various local independent contractors, who in turn hire the workers who perform the cleaning. Each subcontractor hires and supervises its own employees and keeps its own records of their hours worked and pay. As a result, Defendant does not have access to specific information regarding the number of JWs each independent contractor employed, the number of hours each Plaintiff worked, the amount of meal or rest breaks each Plaintiff took, the amount of overtime, if any, each Plaintiff worked, whether they were paid on an hourly or flat rate basis, the amount of vacation or sick days each Plaintiff took, the number of Plaintiffs terminated by the ICs or the number of wage statements

10

given, if at all, to each Plaintiff.  Accordingly, Defendant will make good faith, conservative estimates based on the allegations in the Complaint in order to calculate the amount in controversy in this action.

32.     Plaintiffs allege that Defendant "employed Plaintiffs and class members – hundreds of ICs and thousands of JWs  – and relied on them to provide cleaning services for its clients throughout California." Compl. ¶ 22.  Plaintiffs further allege that "each of the three proposed classes includes hundreds of individuals and that membership in Classes II and III could number into the thousands." *Id.* ¶ 62.

33.     As discussed in paragraph 8 *supra*, Defendant did not employ any of the Plaintiffs in this action, and any attempt by Plaintiffs to allege otherwise is meritless.  However, Defendant did enter into contractual agreements with the ICs' companies to perform work for Defendant's customers.  Lombardi Decl. ¶ 10.  For example, Plaintiff Sanchez' companies, "Hernandez Cleaning Service" and "Hernandez Janitorial Service," entered into agreements whereby their employees, the alleged JWFs and JWHs in this action, performed janitorial services, floor maintenance, and general cleaning (dusting, vacuuming, sweeping and lavatory cleaning) for Defendant's clients.  *Id.* ¶¶ 12, 15, and Attachment A thereto.  Plaintiff Sanchez' companies were in a business relationship with Defendant from November 2006 until April 2013.  *See Id.* ¶ 12; Compl. ¶ 13.  Plaintiff Camey entered into an agreement, whereby her company, "Professional CCS Cleaning Service," performed janitorial services, floor maintenance, and general cleaning (dusting, vacuuming, sweeping and lavatory cleaning) for Defendant's clients.  *See* Lombardi Decl. ¶¶ 14, 15, and Attachment C thereto.  Plaintiff Camey's company, "Professional CCS Cleaning Service" was in a business relationship with Defendant from 2007 until March 2013.  *See Id.* at ¶ 14; Compl. ¶ 14.  Plaintiff Ramirez entered into an agreement, whereby his company, "JCR Janitorial," performed janitorial services, floor maintenance, and general cleaning (dusting, vacuuming, sweeping and lavatory cleaning) for Defendant's clients.  *See*  Lombardi Decl. ¶¶ 13, 15, and Attachment B thereto.  Plaintiff Ramirez' company was in a business relationship with Defendant from 2005 until 2013.  *See Id.* at ¶ 13; Compl. ¶ 15.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

Defendant Capital Contractors, Inc.'s Notice of Removal of Civil Action to Federal Court

34.     During the relevant time period as alleged in the Complaint, April 25, 2010 (four years prior to the filing of the Complaint) through June 4, 2014,[2] Defendant was a party to independent contractor agreements with approximately 153 different subcontractors in California that performed janitorial and floor maintenance services during this time. *See* Lombardi Decl. ¶ 15. Defendant was a party to 73 independent contractor agreements in 2014, all with subcontractors in California. *See Id.* From April 25, 2014 to April 26 2013 (the one year preceding the Complaint), Defendant was a party to 88 independent contractor agreements, all with subcontractors in California. *See Id.* From April 25, 2013 to April 26 2012, Defendant was a party to 77 independent contractor agreements, all with subcontractors in California. *See Id.* From April 25, 2012 to April 26 2011, Defendant was a party to 69 independent contractor agreements, all with subcontractors in California. *See Id.* At no time during the period covered by the Complaint did Defendant subcontract with fewer than 69 independent contractors. *See Id.* Using the average of the three years preceding the complaint (78), Defendant will estimate that Defendant contracted with an average of 78 ICs in California during the applicable time period.

35.     In addition to the 78 ICs, Defendant is using the conservative number of 1,000 JWHs and JWFs, even though Plaintiffs allege the total number could number in the thousands, which would mean 2,000 at the very least. Accordingly, the estimated total number of putative class members is not less than 1,078 (78 ICs + 1,000 JWHs and JWFs = 1,078). Defendant will use that number to estimate the amount in controversy in this case.

36.     **Unpaid Overtime Wages**. Plaintiffs' unpaid overtime claims for the IC class are based upon the allegations that "[a]t all times relevant herein, [the ICs] each worked more than eight (8) hours during a single day…and more than forty (40) hours during a single week for CAPITAL…" Compl. ¶ 35. Plaintiffs' unpaid overtime claims for the JW classes are based upon the allegations that the JWs "regularly worked more than eight (8) hours in a single day and/or more than forty (40) hours in a single week on behalf of CAPITAL." *Id.* ¶50. Although the Complaint does not specify the frequency with which this alleged conduct occurred, the Merriam-Webster

---

[2] The date the information was retrieved to prepare this Notice of Removal.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

1  dictionary defines "regularly" to mean "very often" and "with the same amount of space between

2  each thing."

3        37.    Without admitting any of the allegations of the Complaint, for purposes of removal

4  only, Defendant calculates the amount of unpaid overtime wages in controversy as follows.

5  Defendant will be conservative in its estimates, and accordingly, will estimate only one hour per

6  week of unpaid overtime for each of the ICs and JWs.  As part of this conservative calculation,

7  Defendant will estimate that each Plaintiff worked 50 weeks a year and took two weeks of time off

8  per year and that all Plaintiffs were earning only the bare California minimum wage.[3]  Thus, all

9  calculations for this cause of action will be made based on 50 weeks of time worked per year at the

10  minimum wage.  Accordingly, conservatively assuming that these 1,000 JWs each claim one hour

11  of overtime per week, the amount of overtime hours at issue is 1,000 overtime hours per week (1

12  hour x 1,000 JWs=1,000 hours/week).  Applying the one hour of overtime per week figure to the

13  150 weeks at issue during the claimed statutory period (50 weeks x 3 years), means that, at a bare

14  minimum, there are at least 150,000 overtime hours at issue (1,000 hours/week x 150

15  weeks/JW=150,000 hours).

16        38.    One and one-half times the hourly rate of $8.00 for a single JW is $12.00 an hour.

17  To determine the monetary amount at issue on the overtime claim, the total number of hours listed

18  above must be multiplied by $4.00 (the additional overtime wages per hour Plaintiffs allege they

19  did not receive). Thus, with approximately 1000 JWs, and assuming one overtime hour per week,

20  per JW, the amount in controversy for this claim is $600,000  ($4.00 an hour x 150,000 hours),

21  separate and apart from any applicable penalties, interest and attorneys' fees.

22        39.    Defendant notes that this estimate is extremely conservative for reasons other than

23  just using a one hour per week estimate.  In addition to the allegations cited in paragraph 36 of this

24  Notice of Removal, Plaintiffs allege that "…[Defendant] also failed to compensate ICs and JWs for

25  all overtime hours worked…" and that Defendant "…knew or should have known that overtime

26  hours were being worked and these hours were going uncompensated."  Compl. ¶¶ 23, 35.  If

27

28  [3] Defendant notes that it is likely that many Plaintiffs made more than minimum wage, but does not
have sufficient information to make a higher estimate.

Defendant Capital Contractors, Inc.'s Notice of Removal of Civil Action to Federal Court

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

Plaintiffs in fact allege that they were uncompensated for any of their overtime, the calculation would be as follows: the total number of hours listed above (150,000) multiplied by 1.5 times the employees' hourly rate ($12.00) for each hour of unpaid overtime. Thus, with approximately 1,000 JWs, and assuming one overtime hour per week per JW, the amount in controversy for this claim is $1,800,000 ($12.00 an hour x 150,000 hours), separate and apart from any applicable penalties, interest and attorneys' fees.

40.     Regarding the ICs, Defendant uses the following calculation of their overtime claim. Conservatively assuming that the 78 ICs are each owed one hour of overtime per week, the amount of overtime hours at issue is 78 overtime hours per week (78 x 1 hour/week=78 overtime hours/week). Applying the one hour of overtime per week figure to the 150 weeks at issue during the claimed statutory period, means that, at a bare minimum, there are at least 11,700 overtime hours at issue (150 x 78 = 11,700 hours). Thus, again assuming that even the ICs are making only the bare state minimum wage, the amount in controversy for this overtime claim is $46,800 ($4.00 an hour x 11,700 hours) separate and apart from any applicable penalties, interest and attorneys' fees. Alternatively, using the methodology and assumptions in paragraph 39 of this Notice of Removal, the amount in controversy for this claim is $140,400 ($12.00 an hour x 11,700 hours) separate and apart from any applicable penalties, interest and attorneys' fees.

41.     Thus, conservatively estimating only one hour of missed overtime pay per Plaintiff, Plaintiffs' alleged overtime claim is **$646,800 ($600,000 + 46,800)**. The above figure is conservative compared to the alternative calculation whereby Plaintiffs overtime claim is **$1,940,400 ($1,800,000 + 140,400)**.

42.     **Missed Meal Breaks**. The Complaint also seeks to recover damages for missed meal breaks. This claim is based on the allegation that

> [t]hrough Defendant CAPITAL's conduct during the applicable statutory period including, but not limited to, the conduct set forth herein…Defendant CAPITAL lacked a policy which directly and/or indirectly relieved Plaintiffs…of all duty for uninterrupted 30-minute periods at all times suffered or permitted to work for Defendant CAPITAL, and, in fact, had practices and procedures that impeded the [Plaintiffs] from taking such meal breaks.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

Compl. ¶146. Moreover, the Complaint alleges that the ICs and JWs "regularly worked sufficient hours to require that they be provided with meal breaks," that "CAPITAL's uniformly applied practice impeded the JWs [and ICs'] right to meal breaks," and that the ICs and JWs "regularly were not relieved of duty for an uninterrupted 30 minute period." *Id.* ¶¶ 38, 52.

43.  Pursuant to California Labor Code § 226.7(c), if an employer fails to provide an employee a meal period in accordance with state law, the employer shall pay the employee one hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

44.  Again without admitting the allegations of the Complaint, for purposes of removal only, Defendant calculates the amount of missed meal breaks in controversy as follows.  Defendant will remain conservative in its estimates and, accordingly, will estimate only one missed meal break per week for each of the ICs and JWs.  As part of this conservative calculation, Defendant will estimate that each Plaintiff took two weeks of time off per year and that all Plaintiffs were making only the minimum wage.  Thus, all calculations for this cause of action will be made based on 50 weeks of time worked per year.  Accordingly, conservatively assuming that these 1,000 JWs each missed one meal break per week, the amount of meal breaks at issue is 1,000 per week.  Applying the one missed meal break per week figure to the 150 weeks at issue during the claimed statutory period (50 weeks x 3 years) means that, at a bare minimum, there are at least 150,000 meal breaks for JWs at issue (150 x 1,000 = 150,000).

45.  To then determine the monetary amount at issue for JWs, the total number of missed meal breaks listed above must be multiplied by the state minimum wage ($8.00 per hour).  Thus, with approximately 1,000 JWs, and assuming one missed meal break per week per JW, the amount in controversy for JWs for this claim is $1,200,000.  ($8.00 per meal break x 150,000 meal breaks=1,200,000), separate and apart from any applicable penalties, interest and attorneys' fees.

46.  Regarding the ICs, Defendant uses the following calculation.  Conservatively assuming that these 78 ICs are each owed one missed meal break per week, the amount of meal breaks at issue per week is 78. Applying the one missed meal break per week figure to the 150 weeks at issue during the claimed statutory period means that at a bare minimum there are at least

15

11,700 missed meal breaks at issue (150 x 78 = 11,700 meal breaks). Accordingly, the amount in controversy for this claim is $93,600 ($8.00 an hour x 11,700 hours=93,600), separate and apart from any applicable penalties, interest and attorneys' fees.

47. Thus, conservatively estimating only one missed meal break per week, per Plaintiff, Plaintiffs meal break claim is at least **$1,293,600 (1,200,000 + 93,600=1,293,600).**

48. **Missed Rest Periods**. The underlying basis for recovery on the missed rest period claim is similar to that of the missed meal break claims in that Plaintiffs allege that they also were not provided rest breaks in compliance with California laws. Compl. ¶¶ 37, 51, 146. California law provides one hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided.

49. Again without admitting the allegations of the Complaint, for purposes of removal only, Defendant calculates the amount in controversy based upon the same calculation used to determine the amount in controversy on Plaintiffs' missed meal period claims. (The number of JWs and ICs, the number of work weeks and the assumed minimum wage rate of pay are the same as for the meal break claim.) Accordingly, the total potential recovery for the missed rest break claim is at least **$1,293,600.**

50. Minimum Wage.

The Complaint alleges that

> [t]hrough Defendant CAPITAL's conduct during the applicable statutory period including, but not limited to, the conduct set forth herein…Defendant CAPITAL directly and/or indirectly paid Plaintiffs…less than minimum wage for all times suffered or permitted to work for Defendant CAPITAL. Defendant CAPITAL further failed to satisfy minimum wage requirements and secretly paid a lower wage while purporting to pay the wage designated by statute or by contract to when it failed to pay the named Plaintiffs and Class members for "all hours worked" in performing work which was incidental to cleaning services (e.g. attending meetings, scheduling employees, commuting in between job sites, etc.) and consequently underpaid [Plaintiffs] for the actual hours each worked…

Compl. ¶167 (¶¶ 23, 36, 53 contain similar allegations).

51. Again without admitting the allegations of the Complaint, for purposes of removal only, Defendant calculates the minimum wages in controversy as follows. Defendant will remain

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

Defendant Capital Contractors, Inc.'s Notice of Removal of Civil Action to Federal Court

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

conservative in its estimates, and accordingly, will estimate only one tenth (0.1) hour of unpaid time per day for the ICs and JWs.  Defendant notes that it would take much longer than 0.1 hour to commute between job sites or to attend meetings, but as part of this conservative calculation, the Defendant is using this extremely low number.  Similar to the other claims, Defendant will estimate that each Plaintiff took two weeks of time off per year and that all Plaintiffs were making the state minimum wage.  Thus, all calculations for this cause of action will be made based on 50 weeks of time worked per year.  Accordingly, conservatively assuming that these 1,000 JWs each missed 0.1 hours of pay per day (0.5 per week), the amount of unpaid time per week at issue is 500 hours (1,000 JWs x 0.5 unpaid hours/week=500 hours).  Applying the 500 hours per week figure to the 150 weeks at issue during the claimed statutory period, means that, at a bare minimum, there are at least 75,000 hours of unpaid time at issue (150 x 500 = 75,000).

52.     To then determine the monetary amount at issue, the total number of hours of unpaid overtime listed above must be multiplied by the minimum wage ($8.00 per hour).  Thus, with approximately 1,000 JWs, and assuming 0.5 hours of unpaid time per week, per JW, the amount in controversy for this claim is $600,000 ($8.00 per hour x 75,000 hours of unpaid time), separate and apart from any applicable penalties, interest and attorneys' fees.

53.     Regarding the ICs, Defendant uses the following calculation.  Conservatively assuming that these 78 ICs are each owed 0.5 hours of unpaid time per week, the amount of unpaid hours at issue is 39 unpaid hours per week (78 ICs x 0.5 hours/week=39).  Applying the 39 hours per week figure to the 150 weeks at issue during the relevant statutory period, means that, at a bare minimum there are at least 5,850 hours of unpaid time at issue (150 x 39 = 5,850).  Accordingly, the amount in controversy for this claim is $46,800 ($8.00 an hour x 5,850 hours), separate and apart from any applicable penalties, interest and attorneys' fees.

54.     Thus, conservatively estimating only 0.1 hour of missed time per day per Plaintiff, Plaintiffs' alleged overtime claim is at least **$646,800** (600,000 + 46,800)**.**

55.     **Wage Statement Penalties**.  The Complaint alleges Defendant failed to provide and maintain accurate itemized wage statements to ICs and JWs:

> [t]hrough Defendant CAPITAL's conduct during the applicable
> statutory period including, but not limited to, the conduct set forth

17

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

> herein…Defendant CAPITAL knowingly and intentionally failed to provide accurate itemized wage statements reflecting, among other things, accurate number for "all hours worked", accurate gross wages earned, accurate hourly rate, accurate method of computation for new wages paid to Plaintiffs…, including but not limited to as a result of its knowing and intentional misclassification of the…Plaintiffs as independent contractors…

Compl. ¶¶ 179, 180.

56.     Because Defendant was not the employer of any of the Plaintiffs, Defendant itself never issued any wage statements to any Plaintiffs. Again without admitting the allegations of the Complaint, for the purposes of removal only, Defendant will assume a maximum violation rate for this claim. California Labor Code § 226(a) provides for a penalty of $50 for the first violation per employee and $100 for each subsequent pay period per employee for failure to furnish itemized wage statements.

57.     For the purpose of calculating this claim, Defendant will use 88 IC's (the number of ICs Defendant subcontracted with during the 1 year preceding the complaint) because of the applicable 1 year statute of limitations. Thus, assuming all Plaintiffs (ICs and JWs) have a claim for violations in each pay period (i.e., every two weeks) for the one year period from April 26, 2013 to April 25, 2014, the claim per Plaintiff would be $2,550 ($50 x 1 for the first violation= 50; plus $100 x 25 for each subsequent violation = 2,500; 50 + 2,500 = $2,550). Accordingly, at minimum 1,088 Plaintiffs could potentially be entitled to the maximum available penalty. As such, the total wage statement penalty claim under Labor Code 226(a) amounts to at least **$2,774,400** ($2,550 x 1,088 JWs and ICs = $2,774,400)[4], separate and apart from any applicable penalties, interest and attorneys' fees.

58.     **Failure to Pay Wages Upon Termination Penalties**. The Complaint alleges Defendant failed to pay wages upon termination of ICs and JWs:

> [t]hrough Defendant CAPITAL's conduct during the applicable statutory period including, but not limited to, the conduct set forth

[4] Defendant notes that as hourly workers, Plaintiffs could have been paid weekly, rather than bi-weekly during the applicable statutory period. In the event they were paid weekly, Plaintiffs would be entitled to a maximum statutory penalty of $4,000 per Plaintiff. Thus, the damages calculation would then total $4,352,000 ($4,000 x 1,088 JWs and ICs = $4,352,000). However, consistent with the other calculations in this Notice of Removal, Defendant is taking the more conservative approach.

Defendant Capital Contractors, Inc.'s Notice of Removal of Civil Action to Federal Court

herein…Defendant CAPITAL willfully failed to provide Plaintiffs…,whose employment with Defendant ended at any point in the three years preceding the filing of the complaint or tolling thereof, with all wages due and owing, including minimum wages, wages for "all hours worked", overtime wages, all deductions made from their wages for necessary expenses and cost, including insurance and other related expenses within the time requirements set forth in Sections 201 (a) and 202 (a) of Labor Code.

Compl. ¶ 205 (¶¶ 40, 56 contain similar allegations that "CAPITAL has consistently failed to timely remit final payments in full" to Plaintiffs.)

59. California Labor Code 203 provides that if an employer fails to pay any wages of an employee who is discharged or who quits, the employee is entitled to a day's pay for each day until paid or until an action therefore is commenced; but such penalty shall not continue for more than 30 days. As stated above, Defendant did not employ or supervise any JWs and does not have any knowledge regarding when or if any JWs were terminated from their employment with the ICs. Defendant does, however, know that during the applicable time period, 83 subcontractors in California have ceased doing work for or were terminated by Defendant. Lombardi Decl. ¶ 17. Defendant did not employ the ICs, but the Complaint alleges Defendant did. Again without admitting the allegations of the Complaint, for purposes of removal only, Defendant calculates the amount of unpaid final wages in controversy for ICs as follows. Defendant will again use a conservative estimate of $8.00 per hour at 8 hours per day, per IC during the 30 day period. Thus, each of the terminated ICs would be entitled to $1,920 for the 30 day period ($8.00 x 8 = $64.00 per day x 30 days = $1,920). As such, the total potential recovery under Labor Code 203 (a) amounts to at least **$159,360** (83 x $1,920 = $159,360), separate and apart from any applicable penalties, interest and attorneys' fees.

60. **Attorney's Fees.** Where the underlying law provides for the payment of attorneys' fees, the amount of fees is included in calculating the amount in controversy. *Altamirano v. Shaw Indus., Inc.*, 2013 WL 2950600 at *13 (N.D. Cal. June 14, 2013) (*citing Lowdermilk v. U.S. Bank Nat. Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007)). The Ninth Circuit has recognized as reasonable a calculation of attorneys' fees at 25% of the total amount in controversy. *Id.* (*citing Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees"); *Fong*, 2014 WL 26996 at *7 (holding that for the purposes of

calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately 25% of the projected damages).  Accordingly, Defendant will include a 25% attorney's fee in its damages calculation.  Based on the above calculations, the attorney's fees in controversy are **$1,703,640** (25% of 6,814,560) (or **$2,027,040** (25% of $8,108,160) using the alternative overtime calculation).

61.    **Summary.**  Thus, even without assessing the amount in controversy with respect to Plaintiffs' remaining claims (for misclassification as independent contractors, unlawful terms and conditions of employment, failure to indemnify, unlawful deductions and secret underpayment of wages, failure to pay timely wages, negligent misrepresentation, unfair business practices and all PAGA claims)—and, having considered only one-half the minimum number of the potential class members, earning the bare state minimum wage with respect to only the claims analyzed above— the total potential recovery with regard to the putative class members is **$6,814,560** (or **$8,108,160** using the alternative overtime calculation), in addition to potentially recoverable penalties, interest and attorneys' fees, also sought by Plaintiff.  Including attorney fees on only the claims analyzed above, the total amount in controversy is **$8,518,200** (or **$10,135,200**  using the alternative overtime calculation).

| Plaintiffs' Alleged Claim | Amount in Controversy |
| --- | --- |
| Misclassification as Independent Contractors | Uncalculated |
| Unlawful Terms and Conditions | Uncalculated |
| Failure to Indemnify | Uncalculated |
| Failure to Pay Timely Wages | Uncalculated |
| Unlawful Deductions | Uncalculated |
| Negligent Misrepresentation | Uncalculated |
| Unfair Business Practices | Uncalculated |
| Unpaid Overtime Wages | $646,800 - $1,940,400 |

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

Defendant Capital Contractors, Inc.'s Notice of Removal of Civil Action to Federal Court

| | |
|---|---|
| Missed Meal Breaks | $1,293,600 |
| Missed Rest Periods | $1,293,600 |
| Minimum Wage Violations | $646,800 |
| Wage Statement Penalties | $2,774,400 |
| Failure to Pay Wages Upon Termination Penalties | $159,360 |
| Attorney's Fees | $1,703,640 - $2,027,040 |
| **Amount in Controversy Total** | **$8,518,200 - $10,135,200** |

62.    Accordingly, although Defendant denies Plaintiffs' claims of wrongdoing, the jurisdictional minimum is satisfied for purposes of determining the amount in controversy, as it readily exceeds the $5,000,000 threshold required under CAFA.

63.    As the named proposed classes exceed 100 members, Plaintiffs and Defendant are diverse, and the amount in controversy exceeds $5,000,000, removal of this action under CAFA is appropriate.

### NOTICE TO PLAINTIFF AND STATE COURT

64.    Defendant will promptly serve this Notice of Removal on all parties and will promptly file a copy of this Notice of Removal with the clerk of the San Mateo Superior Court, the state court in which the action is pending, as required under 28 U.S.C. § 1446(d).

//

//

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

Defendant Capital Contractors, Inc.'s Notice of Removal of Civil Action to Federal Court

1

## CONCLUSION

2        65.        Based on the foregoing, Defendant requests that this action be removed to this Court.

3    If any question arises as to the propriety of the removal of this action, Defendant respectfully

4    requests the opportunity to present a brief and oral argument in support of its position that this case

5    is subject to removal.

6    Dated:  June 6, 2014                        Respectfully submitted,

7                                                HOLLAND & KNIGHT LLP

8

9
                                        By: _____/S/ LINDA AUERBACH ALLDERDICE_____
10                                               Linda Auerbach Allderdice
                                                 Timothy M. Fisher
11                                               Adanna M. Love

12                                            Attorneys for Defendant
                                              CAPITAL CONTRACTORS, INC..
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

Defendant Capital Contractors, Inc.'s Notice of Removal of Civil Action to Federal Court

**PROOF OF SERVICE**

STATE OF CALIFORNIA       )
                          )       ss.
COUNTY OF LOS ANGELES     )

    I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 400 South Hope Street, 8th Floor Los Angeles, California 90071.

    On **June 6, 2014**, I caused the foregoing documents described as **DEFENDANT CAPITAL CONTRACTORS, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT** to be served on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

| | |
|---|---|
| Dario De Ghetaldi<br>Amanda L. Riddle<br>COREY, LUZAICH, DE GHETALDI,<br>NASTARI & RIDDLE LLP<br>700 El Camino Real<br>P.O. Box 669<br>Millbrae, CA 94030 | Parviz Darabi<br>Andrew G. Watters<br>Daniel B. Swerdlin<br>LAW OFFICES OF PARVIZ DARABI<br>500 Airport Blvd., Ste. 150<br>Burlingame, CA 94010 |
| Dania M. Alvarenga<br>ALVARENGA LAW<br>1671 The Alameda, Ste. 307<br>San Jose, CA 95126 | |

**[ X ]   (BY MAIL)** Following ordinary business practices, I placed the document for collection and mailing at the offices of HOLLAND & KNIGHT LLP, 400 South Hope Street, 8th Floor, Los Angeles, California 90071, in a sealed envelope.  I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service, and, in the ordinary course of business, such correspondence would be deposited with the United States Postal Service on the day on which it is collected at the business.

**[ X ]   (STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on **June 6, 2014**, at Los Angeles, California.

Mitsuko Eubanks

#29727669_v19

*Holland & Knight LLP*
*400 South Hope Street, 8th Floor*
*Los Angeles, CA 90071*
*Tel: 213.896.2400 Fax: 213.896.2450*

Defendant Capital Contractors, Inc.'s Notice of Removal of Civil Action to Federal Court