IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILLIANA SANCHEZ, et al., | No. C-14-2622 MMC |
| Plaintiffs, | **ORDER DISCHARGING ORDER TO SHOW CAUSE** |
| v. | |
| CAPITAL CONTRACTORS INC., | |
| Defendant. | |

Before the Court is defendant Capital Contractors, Inc.'s ("Capital") response, filed July 25, 2014, to the Court's July 11, 2014 order directing Capital to show cause why the above-titled action should not be remanded to state court. Plaintiffs Lilliana Sanchez, Yolanda Camey, Juan Carlos Ramirez, Jose Antonio Hernandez, Juan Carlos Hernandez, Jose Alfaro, Irma Gonzalez Aguilar, and Lucinda Calindo have filed a reply to Capital's response, and Capital, with leave of court, has filed a surreply.  Having read and considered the parties' respective submissions, the Court rules as follows.

In their complaint, plaintiffs allege thirteen causes of action, eleven of which are denominated in the action as claims under the Private Attorney General Act ("PAGA"), e.g., the First Cause of Action, titled "Misclassification as Independent Contractors and Private Attorney Gen. Act (PAGA)" (see Compl. at 21:17-18), while the remaining two causes of action are, respectively, a claim for negligent misrepresentation and a claim under § 17200

of the California Business and Professions Code. In its Notice of Removal, Capital asserts the district court has jurisdiction over plaintiffs' complaint under the Class Action Fairness Act ("CAFA").

Under CAFA, a district court has jurisdiction over a class action in which (1) the matter in controversy exceeds the sum of $5,000,000, see 28 U.S.C. § 1332(d)(2), (2) any member of the class is a citizen of a state different from any defendant, see 28 U.S.C. § 1332(d)(2)(A), and (3) the class consists of at least one hundred persons, see 28 U.S.C. § 1332(d)(5)(B). As set forth in the Court's July 11, 2014 order, Capital has sufficiently demonstrated that the parties are diverse, and plaintiffs bring the instant action on behalf of a class that, plaintiffs allege, consists of more than one hundred persons. Accordingly, the remaining issue, for purposes of determining whether the Court has jurisdiction under CAFA, is whether the amount in controversy exceeds the sum of $5,000,000.

In its July 11, 2014 order, the Court noted that although Capital contends the amount in controversy totals at least $8,518,200, such calculations were made with respect to claims denominated in the complaint as PAGA claims. Specifically, Capital, in its Notice of Removal, calculates the amount in controversy with respect to the Fifth, Sixth, Seventh, Eighth, Ninth and Eleventh Causes of Action, each of which is denominated in the complaint as a PAGA claim, to be at least $8,518,200. Because PAGA claims are not sufficiently similar to class action claims to "trigger CAFA jurisdiction," see Baumann v. Chase Investment Services Corp., 747 F.3d 1117, 1122 (9th Cir. 2014), the Court directed Capital to show cause why the complaint should not be remanded.

In its response, Capital asserts that each cause of action denominated by plaintiffs as a claim under PAGA is, in fact, a cause of action consisting of both a claim under PAGA and a claim under a Labor Code statute providing for individual relief, and that the calculations set forth in its Notice of Removal reflect sums Capital asserts correspond to the amount in controversy attributable to the portions of the Fifth, Sixth, Seventh, Eighth, Ninth and Eleventh Causes of Action that do not seek relief under PAGA. In their reply,

plaintiffs do not challenge, or even address, Capital's interpretation of the complaint. Nonetheless, because "defects going to the subject matter jurisdiction of the court cannot be waived," see Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1065 (9th Cir. 1979), the Court has reviewed the complaint to determine if Capital's interpretation of the complaint is correct.

Each of the six causes of action upon which Capital relies to establish the requisite amount in controversy is pleaded in a substantially similar manner. Specifically, in each of the subject six causes of action, plaintiffs identify the conduct in which Capital engaged that, plaintiffs allege, constitutes a violation of one or more sections of the Labor Code and/or regulations promulgated by the Industrial Welfare Commission. (See Compl. ¶¶ 130-33, 138 (Fifth Cause of Action), ¶¶ 142-46 (Sixth Cause of Action), ¶¶ 153-56 (Seventh Cause of Action), ¶¶ 163-67 (Eighth Cause of Action), ¶¶ 175-80 (Ninth Cause of Action), ¶¶ 202-05 (Eleventh Cause of Action).) Next, in each of those six causes of action, plaintiffs allege they are entitled to recover "to the fullest extent permissible all available remedies" (see Compl. ¶¶ 140, 151, 161, 173, 189, 209), and, in addition to identifying the remedies available under PAGA (see Compl. ¶¶ 134, 149, 159, 169, 187, 207), identify remedies available under a statute providing for individual relief to a plaintiff who establishes a violation of the substantive labor code section and/or regulation identified in the cause of action (see Compl. ¶¶ 136, 147, 157, 170, 181-83, 206). In light of such allegations as to individual relief, the Court finds Capital's interpretation of the subject six causes of action is correct, specifically, that the Fifth, Sixth, Seventh, Eighth, Ninth, and Eleventh Causes of Action include non-PAGA claims for relief.

Accordingly, the Court finds the complaint is not subject to remand on the ground identified in the Court's order to show cause.

In their reply, plaintiffs argue the complaint should be remanded for a different reason, specifically, that Capital has failed, according to plaintiffs, to show the amount in controversy as to plaintiffs' non-PAGA claims exceeds the sum of $5,000,000. As discussed below, plaintiffs' argument is not persuasive.

3

First, plaintiffs object to Capital's predicating its calculations on a class that includes 1000 "janitorial workers" ("JWs") (see Notice of Removal ¶¶ 9, 35), for the asserted reason that Capital has not offered evidence to support a finding that there have ever been 1000 JWs working for Capital.[1]  Plaintiffs' complaint itself, however, alleges that Capital employed "thousands of JWs" (see Compl. ¶ 22), and, for purposes of meeting its burden to establish the amount in controversy, Capital is entitled to rely on the factual allegations set forth in the complaint, see Kenneth Rothschild Trust v. Morgan Stanley Dean Witter, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (holding courts assume factual allegations in complaint are true when determining amount in controversy).

Second, plaintiffs object to Capital's predicating its calculations on an assumption that the 1000 JWs were employed by Capital for the entirety of the statutory period alleged in the complaint.  Again, plaintiff's objection is without merit, as the complaint itself alleges that "at all times relevant herein," Capital employed "thousand of JWs."  (See Compl. ¶ 22.)

Third, plaintiffs argue Capital bases its calculations on speculation as to the frequency of violations.  Specifically, plaintiffs object to Capital's reliance on the following assumptions:  (1) that each class member was not compensated for "one hour of overtime" for each week worked (see Notice of Removal ¶ 37); (2) that each class member was not provided one meal break and one rest break for each week worked (see id. ¶¶ 44, 49); (3) that each class member worked "one tenth (0.1) hour of unpaid time," i.e. six minutes, in each day worked (see id. ¶ 51); (4) that each class member received an inaccurate wage statement for each two-week pay period (see id. ¶ 57); and (5) that each terminated IC was not paid for one day of work upon termination (see id. ¶ 59).[2]  Plaintiffs argue such

---

[1] The class also includes "independent contractors" ("ICs').  (See Compl. ¶¶ 3, 60.)  Plaintiffs do not object to Capital's estimate as to the number of ICs in the class, which Capital estimates to be 78, 83, or 88, depending on the cause of action alleged on behalf of the ICs.  (See Notice of Removal ¶¶ 34, 40, 46, 49, 53, 57, 59.)

[2] In calculating the amount in controversy, Capital assumed that each class member "took two weeks of time off per year" (see id. ¶ 37; see also id. ¶ 44, 49, 51, 57), and that each class member "earn[ed] only the bare California minimum wage" of $8 per hour (see id. ¶ 37-38; see also id. ¶ 44, 49, 51, 59).  Plaintiffs do not challenge those aspects of Capital's calculations.

4

assumptions are not supported by any allegation in the complaint. The Court disagrees.

The complaint alleges that each alleged Labor Code violation identified in the complaint occurred "systematically" (see Compl. ¶ 2), that Capital required class members to "regularly" work overtime without paying any overtime compensation (see Compl. ¶¶ 35, 50), that Capital "regularly" failed to provide accurate wage statements (see Compl. ¶ 40, 56), and that Capital "consistently" failed to pay all wages due to terminated ICs (see Compl. ¶ 40). Based on such broadly-worded allegations, the Court finds Capital's assumptions as the number of violations at issue are reasonable. See, e.g., Ford v. CEC Entertainment, Inc., 2014 WL 3377990, at *3 (N.D. Cal. July 10, 2014) (holding, where plaintiff alleged defendant "regularly" required class to work without pay, had "policy and/or practice of not paying meal break premiums," and implemented "systematic, company-wide policy to not pay rest period premiums," defendant's calculation as to amount in controversy based on "assumption of a 100% violation rate" was "reasonably grounded in complaint"); Jasso v. Money Mart Express, Inc., 2012 WL 699465, at *5 (March 1, 2012) (holding, where plaintiff alleged Labor Code violations occurred under "uniform policy and scheme" and took place "at all material times," defendant's estimation of "one violation per week" was "sensible reading of the alleged amount in controversy"); Coleman v. Estes Express Lines, Inc., 730 F. Supp. 2d 1141, 1149-50 (C.D. Cal. 2010) (holding, where plaintiff alleged class members "consistently" worked overtime without compensation, defendant "could properly calculate the amount in controversy based on a 100% violation rate").

Lastly, plaintiffs argue Capital overestimated the potential recovery for the class on the meal and rest period claims, by assuming a class member who missed both a meal and rest period is entitled to recover two hours of additional pay. Accordingly to plaintiffs, where an employee is not provided one meal break and one rest break in the same day, the maximum recovery the employee can obtain, under California law, is one additional hour of pay. Even if Capital's assumption that each class member missed one meal period per week and one missed rest period per week were understood to mean both periods

5

were missed on the same day, plaintiffs fail to show Capital's calculations have been overestimated. In support of their position that an employee who is not provided a meal period and a rest period on the same day may recover only one additional hour of pay, plaintiffs rely on a single, unpublished district court opinion. See Lyon v. W.W. Grainger Inc., 2010 WL 1753194 (N.D. Cal. April 29, 2010). Subsequent to the issuance thereof, however, the California Court of Appeal clarified that an employee "may recover up to two additional hours of pay on a single work day for meal period and rest period violations — one for failure to provide a meal period and another for failure to provide a rest period." See United Parcel Serv., Inc. v. Superior Court, 196 Cal. App. 4th 57, 64, 70 (2011). On issues of state law, where "there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts." See Ryman v. Sears, Roebuck and Co., 505 F.3d 993, 994 (9th Cir. 2007) (internal quotation and citation omitted).

Accordingly, plaintiffs have not shown the complaint must be remanded.

## CONCLUSION

For the reasons stated, the Court's July 11, 2014 order to show cause is hereby DISCHARGED.

**IT IS SO ORDERED.**

Dated: September 22, 2014

MAXINE M. CHESNEY
United States District Judge