Dario de Ghetaldi – Bar No. 126782
Amanda L. Riddle – Bar No. 215221
Jennifer E. McGuire – Bar No. 282704
COREY, LUZAICH, DE GHETALDI, NASTARI & RIDDLE LLP
700 El Camino Real
P.O. Box 669
Millbrae, California 94030-0669
Telephone:     (650) 871-5666
Facsimile:     (650) 871-4144

Parviz Darabi – Bar No. 209021
Andrew G. Watters – Bar No. 237990
Daniel B. Swerdlin – Bar No. 243452
LAW OFFICES OF PARVIZ DARABI
500 Airport Blvd., Suite 150
Burlingame, CA 94010
Telephone:     (650) 343-5357
Facsimile:     (650) 343-5391

Attorneys for Plaintiffs

[Additional Plaintiffs' Counsel Appear on Signature Page]

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILLIANA SANCHEZ (dba HERNANDEZ CLEANING SERVICE and HERNANDEZ JANITORIAL SERVICE), YOLANDA CAMEY (dba PROFESSIONAL CCS CLEANING SERVICE), JUAN CARLOS RAMIREZ (dba JCR JANITORIAL SERVICES), JOSE ANTONIO HERNANDEZ, JUAN CARLOS HERNANDEZ, JOSE ALFARO, IRMA GONZALEZ AGUILAR, LUCINA GALINDO, individually and on behalf of all others similarly situated, | Case No. C-14-2622-MMC |

Plaintiffs,

vs.

CAPITAL CONTRACTORS INC., a New York Corporation, dba CAPITAL BUILDING MAINTENANCE SERVICES INC.,

Defendants.

**CLASS ACTION**

FIRST AMENDED COMPLAINT

1.  Misclassification as Independent Contractors;
2.  Unlawful Terms and Conditions;
3.  Failure to Indemnify;
4.  Unlawful Deductions and Secret Under Payment of Wages;
5.  Failure to Pay Overtime Wages;
6.  Failure to Provide Meal Periods;
7.  Failure to Provide Rest Periods;
8.  Failure to Pay Minimum Wages;
9.  Failure To Provide Accurate Itemized Wage Statements;
10. Failure to Pay Timely Wages During Employment;
11. Failure to Pay Wages Due Upon Termination of Employment;
12. Private Attorney General Act; and
13. Unfair Business Practices.

JURY TRIAL DEMANDED

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    VENUE AND JURISDICTION ........................................................................... 2

III.   THE PARTIES ...................................................................................................... 3

       A.     Defendant ................................................................................................. 3

       B.     Plaintiffs .................................................................................................. 3

IV.    FACTUAL ALLEGATIONS ............................................................................... 6

       A.     Summary .................................................................................................. 6

       B.     Allegations Regarding Independent Contractors ("ICs") ....................... 8

       C.     Allegations Relating to Janitorial Workers ("JWs") ........................... 12

V.     CLASS ALLEGATIONS ................................................................................... 15

       A.     Class Definition ..................................................................................... 15

       B.     Numerosity ............................................................................................ 16

       C.     Common Questions of Law and Fact .................................................... 17

       D.     Typicality .............................................................................................. 19

       E.     Adequacy of Representation .................................................................. 19

       F.     Superiority of Class Action ................................................................... 20

VI.    CLAIMS FOR RELIEF ..................................................................................... 21

FIRST CLAIM FOR RELIEF  (Misclassification as Independent Contractors in Violation
of California Labor Code § 226.8) ................................................................................... 21

SECOND CLAIM FOR RELIEF  (Unlawful Terms and Conditions Under California
Labor Code § 432.5) ........................................................................................................ 21

THIRD CLAIM FOR RELEIF  (Failure to Indemnify in Violation of California Labor
Code §§ 2802 and 2804) .................................................................................................. 22

FOURTH CLAIM FOR RELIEF  (Unlawful Deductions, Repayment of Wages and Secret
Underpayment of Wages in Violation of California Labor Code §§ 221 and 223) .......... 23

FIFTH CLAIM FOR RELIEF  (Failure to Pay Overtime Wages in Violation of California
Labor Code §§ 510, 1194 and 1198, and Section 3 Wage Order 5, "Hours and Days of
Work") .............................................................................................................................. 24

SIXTH CLAIM FOR RELIEF  (Failure to Provide Meal Periods in Violation of California
Labor Code §§ 226.7, 512,  and Section 11 of Wage Order 5, "Meal Periods") ............. 25

SEVENTH CLAIM FOR RELIEF  (Failure to Provide Rest Periods in Violation of California Labor Code § 226.7,  and Section 12 of Wage Order 5, "Rest Periods") ................. 26

EIGHTH CLAIM FOR RELIEF  (Failure to Pay Minimum Wages in Violation of California Labor Code §§ 1197, and 1198, and Section 4 of Wage Order 5, "Minimum Wages") ........................................................................................................... 27

NINTH CLAIM FOR RELIEF  (Failure to Provide and Maintain Accurate Itemized Wage Statements in Violation of California Labor Code §§ 226, 1174, 1174.5, and Section 7 of Wage Order 5, "Records") ....................................................................... 28

TENTH CLAIM FOR RELIEF  (Failure to Pay Timely Wages During Employment in Violation of California Labor Code § 204) ................................................... 30

ELEVENTH CLAIM FOR RELIEF  (Failure to Pay Wages Due Upon Termination in Violation of  California Labor Code §§ 201- 203) ........................................ 31

TWELFTH CLAIM FOR RELIEF  (California Private Attorney General Act ("PAGA"), California Labor Code §§ 2699 *et seq.*) ...................................... 32

THIRTEENTH CLAIM FOR RELIEF  (Unfair Business Practices in Violation of California Business & Professions Code §§ 17200, *et seq.*) ........................ 36

PRAYER FOR RELIEF ................................................................................. 38

DEMAND FOR JURY TRIAL ...................................................................... 40

ADDITIONAL PLAINTIFFS' COUNSEL .................................................... 40

## I.    INTRODUCTION

1.    Plaintiffs LILLIANA SANCHEZ (dba HERNANDEZ CLEANING SERVICE and HERNANDEZ JANITORIAL SERVICE), YOLANDA CAMEY (dba PROFESSIONAL CCS CLEANING SERVICE), JUAN CARLOS RAMIREZ (dba JCR JANITORIAL SERVICES), JOSE ANTONIO HERNANDEZ, JUAN CARLOS HERNANDEZ, JOSE ALFARO, IRMA GONZALEZ AGUILAR, and LUCINA GALINDO (hereinafter "Plaintiffs"), bring this class action on behalf of themselves and other similarly situated individuals who have worked in California for CAPITAL CONTRACTORS, INC., doing business in California as CAPITAL BUILDING MAINTENANCE SERVICES, INC. (hereinafter "CAPITAL"), at any time beginning April 25, 2010 (four years before the filing of the original complaint in this matter) until resolution of this action.

2.    Throughout the relevant time period of this action, CAPITAL has violated the California Labor Code, the California Code of Regulations, the California Business & Professions Code, and the California Civil Code.  Plaintiffs, on their own behalf and on behalf of all Class Members, bring this action pursuant to: California Labor Code §§ 201-204, 221, 223, 226.7, 226.8, 432.5, 510, 512, 1174, 1174.5, 1194, 1197, 1198, 2802, and 2804; and California Code of Regulations § 11050 ("Wage Order 5").

3.    Specifically, Plaintiffs' challenge CAPITAL'S policies of: (1) engaging in a pattern or practice of willfully misclassifying employees as independent contractors; (2) requiring its employees to sign "Independent Contractor Agreements" that contained terms that CAPITAL knew were unlawful; (3) failing to indemnify its employees; (4) taking unlawful deductions from employees' wages; (5) failing to pay overtime wages; (6) failing to provide meal periods; (7) failing to provide rest periods; (8) failing to pay minimum wages; (9) failing to provide and maintain accurate itemized wage statements; (10) failing to pay timely wages during employment; and (11) failing to pay wages due upon termination.

4.    Plaintiffs, on behalf of themselves and all others similarly situated, also seek penalties under the Labor Code Private Attorneys General Act of 2004 ("PAGA").  PAGA provides that any civil penalty assessed and collected by the Labor and Workforce

Development Agency ("LWDA") for violations of applicable provisions of the California Labor Code may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself and other current or former employees pursuant to procedures outlined in California Labor Code § 2699.3. On January 21, 2014, Plaintiffs provided written notice by certified mail to the LWDA and Capital, of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the violations. More than thirty-three (33) days have passed since the mailing of Plaintiffs' letter, and Plaintiffs have not received a letter from the LWDA stating its intent to investigate their claims.

5. Plaintiffs, on behalf of themselves and all others similarly situated, also bring this action pursuant to California Civil Code §§ 1709-1710, for negligent misrepresentation. CAPITAL misrepresented to certain Plaintiffs that classification as independent contractors was proper and Plaintiffs relied upon this representation to their detriment.

6. Plaintiffs, on behalf of themselves and all others similarly situated, also bring this action pursuant to California Business & Professions Code §§ 17200-17208, for unfair competition due to CAPITAL'S unlawful violations of the California Labor Code, and Wage Order 5. Plaintiffs, on behalf of themselves and all others similarly situated, seek injunctive relief and restitution under § 17203.

7. Plaintiffs, on behalf of themselves and all others similarly situated, also request reasonable attorneys' fees and costs pursuant to, *inter alia*, the California Labor Code and California Code of Civil Procedure § 1021.5.

## II. VENUE AND JURISDICTION

8. This case was originally filed in the Superior Court of California, County of San Mateo, on April 25, 2014. On June 9, 2014, CAPITAL filed a petition for removal in this Court premised on the Class Action Fairness Act ("CAFA"). On July 11, 2014, the Court issued an order directing Capital to show cause why the action should not be remanded to state court. On September 22, 2014, after the parties briefed the issue of remand, the Court

1   discharged its order to show cause finding that jurisdiction was proper in the United States

2   District Court under CAFA.

3       9.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1398. Capital

4   employs Class Members and transacts business in San Mateo County.

### III.   THE PARTIES

**A.   Defendant**

6

7       10.     CAPITAL provides cleaning services to major industrial clients throughout

8   California, such as hospitals, office buildings, retail stores, and health clubs. CAPITAL is

9   incorporated in New York.

10      11.     As more fully set forth herein, CAPITAL contracts with individuals and small

11  businesses to oversee the performance of janitorial services in accordance with a standardized

12  set of policies and procedures. CAPITAL misclassifies these individuals and/or the proprietors

13  of these small businesses as independent contractors (hereinafter referred to as the "ICs"). The

14  ICs perform the janitorial services themselves for CAPITAL'S clients, and/or engage janitorial

15  workers (hereinafter referred to as "JWs") to perform the janitorial services for CAPITAL'S

16  clients.

17      12.     Through these aforementioned standardized policies and procedures, CAPITAL

18  controls the manner and means by which Plaintiffs perform their work. CAPITAL is an

19  "employer" as defined and regulated by the California Labor Code, Wage Order 5, and

20  California common law.

21  **B.   Plaintiffs**

22      13.     Plaintiff LILLIANA SANCHEZ does business under the fictitious business

23  names of "HERNANDEZ CLEANING SERVICE" and "HERNANDEZ JANITORIAL

24  SERVICE" (hereinafter referred as "SANCHEZ"). SANCHEZ worked for CAPITAL from on

25  or about November 2006 until on or about April 2013 in various counties in California.

26  SANCHEZ worked on CAPITAL'S behalf and in conformance with CAPITAL'S specific

27  directives and instructions, and was misclassified as an IC during that period. SANCHEZ was

28  paid on an hourly basis based on the number of hours CAPITAL preauthorized the JWs to

spend cleaning each location. From the amount CAPITAL paid SANCHEZ, SANCHEZ had to pay the wages of each of her JWs, all business expenses, as well as her own wages. SANCHEZ was misclassified by CAPITAL as an IC, and should have been properly classified and treated as a non-exempt hourly employee ***of CAPITAL***.

14. Plaintiff YOLANDA CAMEY does business under the fictitious business name of "PROFESSIONAL CCS CLEANING SERVICE" (hereinafter referred as "CAMEY"). CAMEY worked for CAPITAL from on or about 1999 until on or about March 2013. CAMEY worked on CAPITAL'S behalf and in conformance with CAPITAL'S specific directives and instructions. In 2011, in conformance with CAPITAL'S specific directives and instructions, CAMEY formed a corporation, PROFESSIONAL CCS CLEANING SERVICES, a California Corporation ("CCS"), through which she continued to perform janitorial services for CAPITAL. CAMEY was paid on an hourly basis based on the number of hours CAPITAL preauthorized the JWs to spend cleaning each location. From the amount CAPITAL paid CAMEY, CAMEY had to pay the wages of each of her JWs, all business expenses, as well as her own wages. CAMEY was misclassified as an IC by CAPITAL, and should have been properly classified and treated as a non-exempt hourly employee ***of CAPITAL***.

15. Plaintiff JUAN CARLOS RAMIREZ does business under the fictitious business name of "JCR JANITORIAL SERVICES" (hereinafter referred as "RAMIREZ"). RAMIREZ worked for CAPITAL as an IC from on or about 2007 until on or about February of 2013 in various counties in California. RAMIREZ worked on CAPITAL'S behalf and in conformance with CAPITAL'S specific directives and instructions. RAMIREZ was paid on an hourly basis based on the number of hours CAPITAL preauthorized the JWs to spend cleaning each location. From the amount CAPITAL paid RAMIREZ, RAMIREZ had to pay the wages of each of his JWs, all business expenses, as well as his own wages. RAMIREZ was misclassified as an IC by CAPITAL, and should have been properly classified and treated as a non-exempt employee ***of CAPITAL***.

16. Plaintiff JOSE ANTONIO HERNANDEZ (hereinafter referred to as "JOSE HERNANDEZ") worked as a JW from on or about December 2009 until on or about March

2013 in various counties in California. JOSE HERNANDEZ worked on CAPITAL'S behalf and in conformance with CAPITAL'S specific directives and instructions. JOSE HERNANDEZ was paid on an hourly basis for his work as a JW on behalf of CAPITAL. He should have been properly classified and treated as a non-exempt employee *of CAPITAL*.

17. Plaintiff JUAN CARLOS HERNANDEZ (hereinafter referred as "JUAN HERNANDEZ") worked as a JW from on or about December 2010 until on or about November 2012 in various counties in California on CAPITAL'S behalf and in conformance with CAPITAL'S specific directives and instructions. JUAN HERNANDEZ was paid on an hourly basis for his work as a JW on behalf of CAPITAL. JUAN HERNANDEZ should have been properly classified and treated as a non-exempt employee *of CAPITAL*.

18. Plaintiff JOSE ALFARO (hereinafter referred as "ALFARO") worked as a JW from on or about March 2007 until on or about February 2013 in various counties in California. ALFARO worked on CAPITAL'S behalf and in conformance with CAPITAL'S specific directives and instructions. ALFARO was paid on any hourly basis for his work as a JW on behalf of CAPITAL. He should have been properly classified and treated as a non-exempt employee *of CAPITAL*.

19. Plaintiff IRMA GONZALEZ AGUILAR (hereinafter referred as "AGUILAR") worked as a JW from on or about 2009 until on or about February 2013 in various counties in California. AGUILAR worked on CAPITAL'S behalf and in conformance with CAPITAL'S specific directives and instructions. AGUILAR was paid on a salary (i.e. flat-rate) basis for her performance of JW services on behalf of CAPITAL. AGUILAR should have been properly classified and treated as a non-exempt employee *of CAPITAL* and paid on an hourly basis.

20. Plaintiff LUCINA GALINDO (hereinafter referred as "GALINDO") worked for CAPITAL as a JW from on or about March 2007 until on or about April of 2013 in various counties in California. GALINDO worked on CAPITAL'S behalf and in conformance with CAPITAL'S specific directives and instructions. GALINDO was paid on an hourly basis for her work as a JW on behalf of CAPITAL. GALINDO should have been properly classified and treated as a non-exempt employee *of CAPITAL*.

## IV.   FACTUAL ALLEGATIONS

### A.   Summary

21.     During the relevant time period, CAPITAL employed, and continues to employ, Plaintiffs and other similarly situated individuals to provide janitorial services.

22.     During the relevant time period, CAPITAL required the ICs to sign an "Independent Contractor Agreement" as a condition of employment.   The "Independent Contractor Agreement" was drafted by CAPITAL and the ICs had no ability to negotiate the terms.

23.     The "Independent Contractor Agreement" purports to classify the ICs as independent contractors so as to conceal the true nature of the relationship between CAPITAL and the ICs: that of employer and employees.   Although a large portion of the ICs speak Spanish, and speak only limited English, CAPITAL chose to only provide the "Independent Contractor Agreement" in English.

24.     At all times relevant herein, CAPITAL employed Plaintiffs and Members of the Class, potentially hundreds of ICs and thousands of JWs, and relied on them to provide cleaning services for its clients throughout California.   CAPITAL misclassified each and every IC as an independent contractor, when, in fact, they were employees of CAPITAL.   The ICs engaged JWs to carry out CAPITAL'S tasks.   During the relevant period, CAPITAL set strict standards, policies, and procedures, which it applied uniformly, and expected the ICs and JWs to carefully follow.   CAPITAL routinely monitored the details of the work of its ICs and JWs to ensure strict adherence to CAPITAL'S standards, policies, and procedures.

25.     In turn, the ICs are responsible for cleaning CAPITAL'S clients' properties and/or supervising the JWs, who clean CAPITAL'S clients' properties.   CAPITAL'S policies and practices require all ICs to be on-call and immediately responsive to CAPITAL'S demands twenty-four (24) hours per day, three hundred and sixty-five (365) days per year.   Despite classifying the ICs as independent contractors, CAPITAL mandated that its ICs:  (a) purchase CAPITAL uniforms; (b) don CAPITAL uniforms when at a client's site; (c) purchase and use specific supplies and chemicals from CAPITAL; (d) receive payment via direct deposit only,

1    and pay any and all related fees for that service; (e) follow CAPITAL'S strict instructions as to

2    the number of hours spent cleaning each client's location; (f) report the number of hours spent

3    cleaning each client's location (via a clock-in/clock-out system directly connected to

4    CAPITAL'S headquarter office (hereinafter the "IVR system"); (g) face disciplinary action,

5    including a reduced work schedule, for failure to spend the number of hours set by CAPITAL

6    cleaning each client's location; and (h) obey CAPITAL'S ultimate supervision as to the quality

7    and completion of any given cleaning job. CAPITAL paid, and continues to pay, its ICs at an

8    hourly rate based on the number of hours ICs and/or JWs spend cleaning each location as

9    reported via the IVR system, which CAPITAL monitors on a regular basis. CAPITAL holds

10   ultimate control over all employment decisions with respect to the JWs engaged by the ICs.

11       26.    JWs are engaged by, and follow direct orders from, CAPITAL, through the ICs,

12   (who themselves are actually employees of CAPITAL, despite being misclassified as

13   "independent contractors.") CAPITAL uniformly mandates that all JWs: (a) don a CAPITAL

14   uniform; (b) spend the majority, if not all, of their time performing labor-oriented, non-

15   administrative, and non-managerial tasks; and (c) report the hours they work directly to

16   CAPITAL via the IVR system. If the hours reported via the IVR system do not match the

17   number of hours CAPITAL requires JWs to spend at each location, CAPITAL will discipline

18   the JW by reducing the work schedule of the JW. JWs were, and continue to be, paid at an

19   hourly rate and should be properly classified as non-exempt hourly employees of CAPITAL.

20       27.    The "independent contractor" arrangement is a sham used by CAPITAL to

21   knowingly and deliberately evade its legal responsibilities to the ICs and JWs.

22       28.    At all times relevant herein, CAPITAL directly and/or indirectly paid each

23   Plaintiff and Class Member less than minimum wage for the work that the performed for

24   CAPITAL. CAPITAL failed to satisfy minimum wage requirements, when it failed to pay the

25   named Plaintiffs and Class Members for the required minimum wage for "all hours worked" in

26   performing work which was incidental to cleaning services and their employment (e.g.

27   attending meetings, creating schedules, travelling between job sites, etc.) and consequently

28   underpaid its ICs and JWs for the actual hours each worked. CAPITAL also failed to

compensate ICs and JWs for all overtime hours worked, failed to establish a meal and rest break policy that complies with the law, maintained practices and procedures that impeded the ICs' and JWs' right to take meal and rest breaks, failed to provide itemized wage statements, and failed to indemnify ICs and JWs for all business expenses incurred. CAPITAL'S practices, policies and procedures, or lack thereof, violated California and Federal law, and were uniformly applied at the direction of CAPITAL to the detriment of all Class members.

**B.** **Allegations Regarding Independent Contractors ("ICs")**

29. Wage Order 5 defines "employer" as any person "who directly or indirectly, or through an agent, for any other person, employs or *exercises control* over the wages, hours, or working conditions of any person." (CCR § 11050(2)(H); emphasis added.) California Labor Code § 3353 defines an "independent contractor" as a "person who renders service for a specified recompense for a specified result, under the control of his principal *as to the result of his work only* and not as to the means by which such result is accomplished." (Emphasis added.)

30. CAPITAL misclassified SANCHEZ, CAMEY, and RAMIREZ as "independent contractors" during the entirety of their respective employment with CAPITAL.

31. In spite of the fact that CAPITAL required SANCHEZ, CAMEY, RAMIREZ, and other ICs to sign "Independent Contractor Agreements," CAPITAL exercised strict control over the details of the work that it directed ICs to perform, and supervised and controlled the means and manner by which the ICs carried out their tasks. CAPITAL also maintained ultimate control over the details of all employment decisions with respect to the crews of JWs engaged through and supervised by ICs. SANCHEZ, CAMEY, RAMIREZ, and other ICs, consistently performed the work of true "employees" during the entirety of their respective engagements with CAPITAL.

32. At all times relevant herein, CAPITAL, required, among other things, SANCHEZ, CAMEY, RAMIREZ, and other ICs: (a) remain on-call twenty-four (24) hours per day, three hundred and sixty-five (365) days per year; (b) don, purchase from CAPITAL, and enforce the donning and purchasing of, CAPITAL uniforms (a shirt with CAPITAL logo);

(c) purchase from CAPITAL and use specific supplies and chemicals for cleaning the facilities, as dictated by CAPITAL; (d) receive their wages from CAPITAL via direct deposit only, a service for which they were charged; (e) follow CAPITAL'S strict instructions as to the locations of work and the number of hours to be spent cleaning each location; (f) clock-in/clock-out at each location using the IVR computer system; and (g) obey CAPITAL'S ultimate supervision as to the details, manner, and quality of any given cleaning job.

33. During the relevant period, CAPITAL kept track of the number of hours that are spent cleaning each location through the IVR system directly connected to CAPITAL'S headquarter office and monitored by CAPITAL on a daily basis. CAPITAL controlled the number of hours ICs spent cleaning each location by preparing the schedules, shifts, and specifically dictating the number of hours to be spent cleaning each location. Similarly, if the number of hours in any given shift/day/week transmitted to CAPITAL via the IVR system did not conform to the hours pre-approved by CAPITAL, then ICs, and ultimately JWs faced negative consequences and punishment that included, among other things, deductions from their wages and changes to their work schedules.

34. At all times relevant herein, CAPITAL disciplined and terminated SANCHEZ, CAMEY, RAMIREZ, and other ICs.

35. At all times relevant herein, CAPITAL exercised that same dominion and control over every IC that CAPITAL employed.

36. The janitorial services SANCHEZ, CAMEY, RAMIREZ, and other ICs performed are a regular and integral part of CAPITAL'S commercial janitorial management business.

37. During the relevant period, CAPITAL deliberately misclassified SANCHEZ, CAMEY, and RAMIREZ as "independent contractors" in order to gain an unfair workforce advantage. CAPITAL knew or should have known that such classifications clearly violate the California Labor Code and Wage Order 5 and run afoul of public policy. Furthermore, CAPITAL included terms in the "Independent Contractor Agreements" with SANCHEZ, CAMEY, and RAMIREZ that it knew or should have known were prohibited by law.

38.     As with SANCHEZ, CAMEY, and RAMIREZ, CAPITAL exercised a uniform policy and practice of misclassifying all California-based ICs for the purpose of gaining an unfair workforce advantage.

39.     CAPITAL'S uniform policies and practices and strict control over its ICs required the ICs to work overtime regularly.   At all times relevant herein, SANCHEZ, CAMEY, RAMIREZ, and other ICs each worked more than eight (8) hours during a single day for CAPITAL and more than forty (40) hours during a single week for CAPITAL.  CAPITAL had the ability to monitor and did monitor the hours worked by all ICs, and knew that overtime hours were being worked by the ICs and that those hours were going uncompensated. However, CAPITAL failed to pay the ICs an overtime rate of pay in connection with work they performed on behalf of CAPITAL.

40.     SANCHEZ, CAMEY, RAMIREZ, and other ICs each travelled between job sites on behalf of CAPITAL.  CAPITAL failed to compensate ICs for the travel time expended, or for other time considered by CAPITAL to be "off-the-clock."  Thus, the ICs did not receive minimum wage for all hours worked, in accordance with the law, when they travelled between job sites or performed other "off-the-clock" work.

41.     At all times relevant herein, SANCHEZ, CAMEY, RAMIREZ, and other ICs regularly worked sufficient hours to require that they be provided with rest breaks.  However, CAPITAL lacked a policy requiring that ICs be authorized or permitted the amount of rest break time required by law.  Rather, CAPITAL'S uniformly applied practice impeded the ICs' right to take rest breaks.  As such, SANCHEZ, CAMEY, RAMIREZ, and other ICs were not authorized or permitted the amount of rest break time required by law and missed such breaks.

42.     At all times relevant herein, SANCHEZ, CAMEY, RAMIREZ, and other ICs regularly worked sufficient hours to require that they be provided with meal breaks.  However, CAPITAL lacked a policy requiring that ICs be relieved of all duty for an uninterrupted 30-minute meal period.  Rather, CAPITAL's uniformly applied practice impeded the ICs right to take meal breaks.  As such, SANCHEZ, CAMEY, RAMIREZ, and other ICs regularly were not relieved of duty for an uninterrupted 30-minute period, as required by law

43. CAPITAL also failed to indemnify ICs for necessary expenditures incurred in performing work for CAPITAL, including, but not limited to, mandatory CAPITAL uniforms, CAPITAL-required supplies and materials, mandatorily-incurred direct deposit fees, and tax-related expenses resulting from the "independent contractor" misclassification. In fact, CAPITAL regularly deducted and withheld money from ICs' wages, for expenses that CAPITAL mandated ICs incur, including but not limited to CAPITAL uniforms, CAPITAL-required supplies and cleaning materials, and direct deposit fees.

44. At all times relevant herein, flowing from its failures with respect to the misclassification, compensation, and reimbursement of ICs, as alleged above, CAPITAL has regularly failed to timely issue complete and accurate wage statements to the ICs, including SANCHEZ, CAMEY, and RAMIREZ. Similarly, CAPITAL has consistently failed to timely remit final payment in full to ICs who no longer work with CAPITAL, including SANCHEZ, CAMEY, and RAMIREZ.

45. CAPITAL'S conduct, as alleged herein, has caused SANCHEZ, CAMEY, RAMIREZ, and other ICs to suffer damages including, but not limited to, loss of wages and compensation. CAPITAL is liable to SANCHEZ, CAMEY, RAMIREZ, and other ICs for failing to pay overtime wages, failing to relieve ICs of their duties for uninterrupted 30-minute period(s), failing to authorize and permit rest breaks, failing to pay all wages owed on each pay period, failing to provide timely and accurate wage statements, failing to pay all wages owed upon termination, failing to indemnify them for expenses CAPITAL mandated that they incur, tax-related expenses resulting from the "independent contractor" classification, and unlawful deduction and withholding of money from ICs' wages for incurred expenses and unfair competition.

46. SANCHEZ, CAMEY, and RAMIREZ (hereinafter collectively referred to as "IC Class Representatives") are members of and seek to be the representatives for the Class of similarly situated ICs who all have been exposed to, have suffered, and/or were permitted to work under, CAPITAL'S unlawful employment practices as alleged herein.

1      **C.      Allegations Relating to Janitorial Workers ("JWs")**

2      47.      Wage Order 5 defines "employer" as any person "who directly or indirectly, or

3      through an agent, for any other person, employs or exercises control over the wages, hours, or

4      working conditions of any person."  (CCR 11050(2)(F).

5      48.      At all times relevant herein, CAPITAL was the JWs employer in that CAPITAL

6      exercised control over the wages, hours, and working conditions of each of the JWs.

7      49.      At all times relevant herein, CAPITAL has held ultimate control over the

8      manner and details of the cleaning jobs performed by JWs at each location directly and/or

9      indirectly by and through its ICs.  At all times relevant herein, CAPITAL has dictated which

10      JW must be terminated, the number of JWs to perform each job, and the total number of hours

11      each JW is allowed to work on a given cleaning job.  Often, one of CAPITAL'S non-IC

12      employees will visit the job sites to review the JWs' work, and declare certain JWs or aspects

13      of the job unsatisfactory.  A JW found by CAPITAL to be performing an unsatisfactory job

14      will face consequences including termination of his/her employment. At all times relevant

15      herein, CAPITAL typically remits payment to the IC for disbursement to JWs.  Nonetheless,

16      when CAPITAL dismisses an IC – or when an IC is otherwise unable to remit payment –

17      CAPITAL remits payment directly to its JWs.

18      50.      At all times relevant herein, CAPITAL has maintained ultimate control over the

19      JWs' work, approving the number of hours JWs spend cleaning each location by means of

20      preparing the shift schedules and by dictating the number of hours to be spent cleaning each

21      location.  When a JW begins cleaning at a CAPITAL client's location, s/he is required by

22      CAPITAL to clock-into the IVR system, which transmits the JW's arrival data directly to

23      CAPITAL.  When a JW concludes the cleaning at CAPITAL client's location, s/he is required

24      to clock-out of the IVR system, which then transmits the departure data directly to CAPITAL.

25      The IVR system enables CAPITAL to monitor which JW worked when, the JWs' hours,

26      whether the JW should have received a meal or rest break, and whether the JW worked

27      overtime.

28

51.     If the number of hours in any given shift/day/week transmitted to CAPITAL via CAPITAL'S IVR system do not comport with the hours pre-approved by CAPITAL, then ICs and JWs face negative consequences and punishment, namely, reduced hours and/or removal from jobs/locations.

52.     The services Plaintiffs JOSE HERNANDEZ, JUAN HERNANDEZ, ALFARO, AGUILAR, and GALINDO and other JWs performed are a regular and integral part of CAPITAL'S business.

53.     At all times relevant herein, CAPITAL required Plaintiffs JOSE HERNANDEZ, JUAN HERNANDEZ, ALFARO, AGUILAR, GALINDO and other JWs to: (a) clock-in/clock-out of the IVR system; (b) answer to the CAPITAL supervisors (both ICs and other employees of CAPITAL); (c) wear a CAPITAL uniform; and (d) spend the bulk of their time performing labor-oriented, non-administrative, and non-managerial tasks in connection with work performed on behalf of CAPITAL.

54.     CAPITAL'S uniform practices and treatment of its ICs, and, therefore, its JWs, required the JWs to regularly work overtime.  At all times relevant herein, Plaintiffs JOSE HERNANDEZ, JUAN HERNANDEZ, ALFARO, AGUILAR, and GALINDO and other JWs, regularly worked more than eight (8) hours in a single day and/or more than forty (40) hours in a single week on behalf of CAPITAL. CAPITAL had the ability to monitor and did monitor the hours worked by all JWs, and, therefore, knew or should have known that these overtime hours were being worked and that these hours were going uncompensated. In spite of this, Plaintiffs JOSE HERNANDEZ, JUAN HERNANDEZ, ALFARO, AGUILAR, and GALINDO and other JWs, never received compensation at any overtime rate of pay in connection with any work they performed on behalf of CAPITAL.

55.     At all times relevant herein, Plaintiffs JOSE HERNANDEZ, JUAN HERNANDEZ, ALFARO, AGUILAR, and GALINDO and other JWs regularly worked sufficient hours to require that they be provided with rest breaks.  However, CAPITAL lacked a policy requiring that JWs be authorized or permitted the amount of rest break time required by law.  Rather, CAPITAL'S uniformly applied practice impeded the JWs right to take rest

breaks. As such, Plaintiffs JOSE HERNANDEZ, JUAN HERNANDEZ, ALFARO, AGUILAR, and GALINDO and other JWs were not authorized or permitted the amount of rest break time required by law and missed such breaks.

56. At all times relevant herein, Plaintiffs JOSE HERNANDEZ, JUAN HERNANDEZ, ALFARO, AGUILAR, and GALINDO and other JWs regularly worked sufficient hours to require that they be provided with meal breaks. However, CAPITAL lacked a policy requiring that JWs be relieved of all duty for an uninterrupted 30-minute meal period. Rather, CAPITAL'S uniformly applied practice impeded the JWs right to take meal breaks. As such, Plaintiffs JOSE HERNANDEZ, JUAN HERNANDEZ, ALFARO, AGUILAR, and GALINDO and other JWs regularly were not relieved of duty for an uninterrupted 30-minute period as required by law

57. At all times relevant herein, Plaintiffs JOSE HERNANDEZ, JUAN HERNANDEZ, ALFARO, AGUILAR, and GALINDO and other JWs did not receive compensation for all hours they worked and did not receive compensation for any of the time spent travelling between job sites on behalf of CAPITAL. Thus, Plaintiffs JOSE HERNANDEZ, JUAN HERNANDEZ, ALFARO, AGUILAR, and GALINDO and other JWs did not receive minimum wage for all hours worked, in accordance with the law, when they travelled between job sites or performed other "off-the-clock" work.

58. At all times relevant herein, CAPITAL, often mandated that specific JWs clean specific locations, requiring the JWs to travel between CAPITAL'S clients' locations. Plaintiffs JOSE HERNANDEZ, JUAN HERNANDEZ, ALFARO, AGUILAR, and GALINDO and other JWs were required to bear the expense of travelling between CAPITAL'S clients' locations. CAPITAL did not indemnify its JWs in connection with this necessary expenditure.

59. At all times relevant herein, Plaintiffs JOSE HERNANDEZ, JUAN HERNANDEZ, ALFARO, AGUILAR, and GALINDO and other JWs, were required by CAPITAL to wear CAPITAL uniforms (a shirt with CAPITAL logo), at all times while performing JW labor. CAPITAL required the named Plaintiffs and other JWs to bear the expense of their CAPITAL uniforms. The named Plaintiffs and other JWs were also required

1  by CAPITAL to maintain and launder their CAPITAL uniforms.  CAPITAL did not indemnify

2  its JWs in connection with these necessary expenditures.

3  60.  At all times relevant herein, flowing from its failures with respect to the

4  compensation and indemnification of JWs, as alleged above, CAPITAL has regularly failed to

5  timely issue complete and accurate wage statements to the JWs, including, without limitation,

6  Plaintiffs JOSE HERNANDEZ, JUAN HERNANDEZ, ALFARO, AGUILAR, and

7  GALINDO.  Likewise, CAPITAL has consistently failed to timely remit final payments in full

8  to JWs who no longer work with CAPITAL, including, without limitation, Plaintiffs

9  RAMIREZ, JOSE HERNANDEZ, JUAN HERNANDEZ, ALFARO, AGUILAR, and

10 GALINDO.

11 61.  CAPITAL has consistently failed to fully compensate and indemnify the

12 expenses of the JWs – including, without limitation, Plaintiffs JOSE HERNANDEZ, JUAN

13 HERNANDEZ, ALFARO, AGUILAR, and GALINDO – in order to gain an unfair workforce

14 advantage.  CAPITAL knew or should have known that such policies and practices violate

15 California law and clearly run afoul of public policy.  Furthermore, the terms CAPITAL

16 included in its agreements with its ICs had adverse effects on JWs and CAPITAL should have

17 known were prohibited by law.

18 62.  Plaintiffs JOSE HERNANDEZ, JUAN HERNANDEZ, ALFARO, AGUILAR,

19 and GALINDO (hereinafter collectively refer to as "JW Class Representatives") are members

20 of and seek to be the representatives for the Class of similarly situated JW employees who all

21 have been exposed to, have suffered, and/or were permitted to work under, CAPITAL'S

22 unlawful employment practices as alleged herein.

## V.  CLASS ALLEGATIONS

### A.  Class Definition

25 63.  Plaintiffs bring this action, on behalf of themselves and all others similarly

26 situated, as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3).  Subject

27 to later amendment as permitted or required by the Court, the classes which Plaintiffs seek to

28 represent are composed and defined as follows:

- **Class I (California-based ICs, represented by SANCHEZ, CAMEY, and RAMIREZ)**: All persons who, from April 25, 2010, through the resolution of this matter, have been (a) employed by CAPITAL in the State of California to perform cleaning services at CAPITAL'S clients' properties; and (b) misclassified as an "independent contractor" by CAPITAL while performing cleaning services and/or supervising the performance of cleaning services at CAPITAL'S clients' properties.

- **Class II (California-based, hourly-rate JWs, represented by JOSE HERNANDEZ, JUAN HERNANDEZ, ALFARO, and GALINDO)**: All persons who, from April 25, 2010, through the resolution of this matter, have: (a) performed the labor of cleaning CAPITAL'S clients' properties on behalf of CAPITAL in the State of California; and (b) received an hourly rate of pay in connection with performing the labor of cleaning CAPITAL'S clients' properties, on behalf of CAPITAL.

- **Class III (California-based, flat-rate JWs, represented by AGUILAR):** All persons who, from April 25, 2010, through the resolution of this matter, have: (a) performed the labor of cleaning CAPITAL'S clients' properties on behalf of CAPITAL in the State of California; and (b) received a flat rate of pay in connection with performing the labor of cleaning CAPITAL'S clients' properties, on behalf of CAPITAL.

**B.     Numerosity**

64.     While the precise number of members for each class has not yet been determined, Plaintiffs are informed and believe that each of the three proposed classes includes hundreds of individuals and that membership in Classes II and III could number into the thousands.  Joinder of all members of the Class is therefore impracticable.

65.     CAPITAL and the ICs possess, control, and/or have custody of documents and information that will enable Plaintiffs to efficiently ascertain the location, number, and identity of the members of the Class.  Among other discoverable items, CAPITAL should possess,

control, or have custody of: (a) signed agreements for each of the Members of Class I confirming their respective "independent contractor" misclassifications; (b) documentation and/or data for each of the Members of Classes II and III reflecting the number of hours worked on any given day; and (c) records reflecting payments from CAPITAL to the Members of Classes I, II and III for services rendered, including without limitation payment from CAPITAL to the Members of Class I for disbursement to the proposed Members of Classes II and III.

### C. Common Questions of Law and Fact

66.     For each of the proposed classes, common questions of law and fact predominate over any individualized questions concerning specific class members.

67.     Common questions of law and fact relating to the Members of Class I predominate and include:

(a)     whether CAPITAL intentionally misclassified the ICs as "independent contractors" instead of "employees";

(b)     whether CAPITAL required its employees to sign "Independent Contractor Agreements" that CAPITAL knew were unlawful;

(c)     the nature and extent of CAPITAL'S supervision and control over the ICs;

(d)     the nature and extent of the duties and responsibilities CAPITAL imposed upon the ICs;

(e)     whether CAPITAL failed to indemnify the ICs' expenses relating to uniforms, cleaning supplies, and direct deposit fees;

(f)     whether CAPITAL failed to provide and maintain accurate itemized wage statements to the ICs;

(g)     whether CAPITAL took unlawful deductions from the ICs' wages;

(h)     whether CAPITAL failed to provide meal periods to the ICs;

(i)     whether CAPITAL failed to provide rest periods to the ICs;

(j)     whether CAPITAL failed to provide overtime wages to the ICs;

1  (k)  whether CAPITAL failed to pay minimum wages to the ICs;

2  (l)  whether CAPITAL failed to pay travel time compensation to the ICs;

3  (m)  whether CAPITAL failed to pay timely wages to the ICs during their

4  employment; whether CAPITAL failed to pay wages due to the ICs

5  upon termination; and

6  (n)  whether CAPITAL'S treatment of the ICs violates Wage Order 5, the

7  California Labor Code, the Civil Code, and/or the Business &

8  Professions Code.

9  68.  Common questions of law and fact relating to the Members of Class II and III

10 predominate and include:

11  (a)  the nature and extent of CAPITAL'S policies and practices of providing

12  funds to the ICs for disbursement to the JWs;

13  (b)  the nature and extent of CAPITAL'S supervision and control over the

14  JWs;

15  (c)  the nature and extent of the duties and responsibilities CAPITAL

16  imposed upon the JWs;

17  (d)  whether CAPITAL failed to indemnify the JWs' expenses relating to

18  uniforms, cleaning supplies, travel expenses, and direct deposit fees;

19  (e)  whether CAPITAL failed to provide and maintain accurate itemized

20  wage statements to the JWs;

21  (f)  whether CAPITAL took unlawful deductions from the JWs' wages;

22  (g)  whether CAPITAL failed to provide meal periods to the JWs;

23  (h)  whether CAPITAL failed to provide rest periods to the JWs;

24  (i)  whether CAPITAL failed to provide overtime wages to the JWs;

25  (j)  whether CAPITAL failed to pay minimum wages to the JWs;

26  (k)  whether CAPITAL failed to pay travel time compensation to the JWs;

27  (l)  whether CAPITAL failed to pay timely wages to the JWs during their

28  employment;

(m) whether CAPITAL failed to pay wages due to the JWs upon termination; and

(n) whether CAPITAL'S treatment of the JWs violates Wage Order 5, the California Labor Code, the Civil Code, and/or the Business & Professions Code.

**D. Typicality**

69. Each Lead Plaintiff presents claims that are typical of the proposed Class Members whom said Plaintiff represents.

70. Plaintiffs SANCHEZ, CAMEY, and RAMIREZ were misclassified as ICs during the Class Period and sustained injuries and damages arising out of and relating to CAPITAL'S common course of conduct with respect to its ICs, all in violation of the California laws, statutes, and regulations as herein alleged.

71. Plaintiffs JOSE HERNANDEZ, JUAN HERNANDEZ, ALFARO, and GALINDO were JWs during the Class Period who were paid on an hourly basis for performing janitorial services on behalf of CAPITAL, under CAPITAL'S specific supervision and direction. Each sustained injuries and damages arising out of and relating to CAPITAL'S common course of conduct with respect to its JWs, all in violation of the California laws, statutes, and regulations as herein alleged.

72. Plaintiff AGUILAR was a JW during the Class Period who was paid on a salary (i.e. flat-rate) basis for performing janitorial services on behalf of CAPITAL, under CAPITAL'S specific supervision and direction. He sustained injuries and damages arising out of and relating to CAPITAL'S common course of conduct with respect to its JWs, all in violation of the California laws, statutes, and regulations as herein alleged.

**E. Adequacy of Representation**

73. Each Lead Plaintiff intends to meaningfully participate in this case and zealously represent and protect the interests of a proposed class. No Lead Plaintiff holds an interest that is antagonistic or otherwise divergent from the interests of his or her proposed class.

74.     Plaintiffs have retained the representation of competent, well-qualified attorneys on behalf of themselves and the members of the proposed classes. Plaintiffs' attorneys have substantial experience with litigating employment actions on a class basis.

**F.      Superiority of Class Action**

75.     A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of proposed class members is not practicable, and questions of law and fact common to each class predominate over any questions affecting only individual members of class. Each proposed class member has been damaged and is entitled to recovery after being subject to unlawful and unfair policies and/or practices which were pervasively perpetrated by CAPITAL against all ICs (Class I) and JWs (Classes II and III).

76.     No other litigation concerning this controversy has been commenced by or against Class Members, or is pending.

77.     Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. It is unlikely that any individual proposed class member wishes to individually control a separate action in connection with this matter.

78.      The proposed class members work in janitorial services and generally lack knowledge of the legal system, intellectual sophistication, and substantial economic resources. As a result, most class members would be deprived of the practical opportunity to pursue their respective individual claims if this matter is not certified as a class action.

79.     Plaintiffs are unaware of any difficulties likely to be encountered in the management of this case that would preclude its maintenance as a class action. The benefits of maintaining this action on a class basis far outweigh any administrative burden in managing the class action. Conducting this case as a class action would prove far less burdensome than prosecuting individual actions – especially given the strong core of common factual and legal questions.

# VI. CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
(Misclassification as Independent Contractors in Violation of California Labor Code § 226.8)

80. Plaintiffs SANCHEZ, CAMEY, and RAMIREZ, on behalf of themselves and the IC putative class, re-allege and incorporate herein by this reference the allegations in each and every paragraph above, as though fully set forth herein.

81. CAPITAL knowingly and voluntarily misclassified SANCHEZ, CAMEY, RAMIREZ, and other putative Class I members as independent contractors in violation of Labor Code § 226.8.

82. As a direct and proximate result of CAPITAL'S unlawful acts and/or omissions, SANCHEZ, CAMEY, RAMIREZ, and other putative Class I members are entitled to recover damages in an amount to be determined at trial, civil penalties, interest thereon, injunctive relief, attorneys' fees, and costs of suit pursuant to Labor Code § 226.8.

83. SANCHEZ, CAMEY, and RAMIREZ on behalf of themselves and other Class I members seek an award of all monies owed resulting from CAPITAL'S violations, other damages according to proof, recovery of applicable penalties, interest as allowed by law, reasonable attorney's fees and costs of suit, injunctive relief, and any other permitted remedies.

## SECOND CLAIM FOR RELIEF
(Unlawful Terms and Conditions Under California Labor Code § 432.5)

84. SANCHEZ, CAMEY, and RAMIREZ on behalf of themselves and the members of putative Class I, re-allege and incorporate by reference the paragraphs above as though fully set forth herein.

85. SANCHEZ, CAMEY, RAMIREZ, and other putative Class I members are/were non-exempt employees of CAPITAL under the laws of the State of California within the meaning of California law.

86. California Labor Code § 432.5 prohibits an employer from requiring any employee or applicant for employment to agree, in writing, to any term or condition which is known by such employer to be prohibited by law.

87.     Through CAPITAL'S conduct during the applicable statutory period including, but not limited to, requiring SANCHEZ, CAMEY, RAMIREZ, and other putative Class I members to sign "Independent Contractor Agreements," which contained terms which CAPITAL knew or should have known were prohibited by law, SANCHEZ, CAMEY, RAMIREZ, and other putative Class I members have suffered, and continue to suffer, substantial losses as a result of the terms or conditions prohibited by law that they were required to agree to, including the use and enjoyment of monies lost as a result of the unlawful terms and conditions, lost interest, expenses and attorney's fees and costs in seeking to compel CAPITAL to fully perform its obligation under state law, all to their respective damage in amounts according to proof at trial and within the jurisdictional limitations of this Court.

88.     SANCHEZ, CAMEY, and RAMIREZ on behalf of themselves and other Class I members seek an award of all monies owed resulting from CAPITAL'S violations, other damages according to proof, recovery of applicable penalties, interest as allowed by law, reasonable attorney's fees and costs of suit, injunctive relief, and any other permitted remedies.

### THIRD CLAIM FOR RELEIF
(Failure to Indemnify in Violation of California Labor Code §§ 2802 and 2804)

89.     Plaintiffs, on behalf of themselves and putative Class I, II, and III members, re-allege and incorporate by reference the paragraphs above as though fully set forth herein.

90.     Each Plaintiff and putative Class I, II, and III members are/were non-exempt employees of CAPITAL under the laws of the State of California within the meaning of California law.

91.     California Labor Code § 2802(a) requires an employer to indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties.

92.     California Labor Code § 2802(c) provides that the term "necessary expenditures or losses" includes all reasonable costs, including, but not limited to attorney's fees incurred by the employee enforcing the rights granted by California Labor Code § 2802.

93.     Section 9 of Wage Order 5 ("Uniforms and Equipment") requires an employer to provide and maintain uniforms an employee is required to wear as a condition of employment.  It also provides that an employer is required to provide and maintain tools, and equipment that are necessary for the performance of a job.

94.     During the relevant period, each Plaintiff and other members of Class I, II, and III, incurred necessary expenditures and losses in direct consequence of the discharge of their employment duties and their obedience of CAPITAL's demands, including, but not limited to, expenditures for cell phones used to communicate with CAPITAL, cleaning supplies, direct deposit fees, uniforms, laundry, gasoline and/or mileage expenses.

95.     CAPITAL has failed to reimburse Plaintiffs and the members of putative Class I, II, and III, for necessary business-related expenses and costs including, but not limited to, the purchase and maintenance of uniforms, supplies, tools, and equipment.  CAPITAL's expense-shifting practices are illegal in California.

96.     Pursuant to California Labor Code § 2804 any contract or agreement, express or implied, made by Plaintiffs and Members of the Class to waive the benefits of Section 2802 or any part thereof, is null and void.

97.     Plaintiffs, on behalf of themselves and on behalf of putative Class I, II, and III members, seek an award of all monies owed resulting from CAPITAL'S violations, other damages according to proof, recovery of applicable penalties, interest as allowed by law, reasonable attorney's fees and costs of suit, injunctive relief, and any other permitted remedies.

**FOURTH CLAIM FOR RELIEF**
(Unlawful Deductions, Repayment of Wages and Secret Underpayment of Wages in Violation of California Labor Code §§ 221 and 223)

98.     Each Plaintiff, on behalf of themselves putative Class I, II and III members, re-alleges and incorporates by reference the paragraphs above as though fully set forth herein.

99.     California Labor Code §§ 221 and 223 prohibit an employer from withholding and deducting wages, or other artificially lowering the wage scale of an employee.

100.     During the relevant period CAPITAL violated California Labor Code §§ 221 and 223, and Section 9 of Wage Order 5 ("Uniforms and Equipment") by requiring each

Plaintiff and other putative Class I, II, and III members to pay for certain expenses and employment-related costs such as uniforms and cleaning supplies that are/were the responsibility of CAPITAL. In addition, CAPITAL required each Plaintiff and other putative Class I, II, and III members to work off-the-clock, including time spent travelling between job sites.

101.    As a direct result of CAPITAL'S violations alleged herein, each Plaintiff and other members putative Class I, II, and III have suffered and continue to suffer, substantial losses including but not limited to the use and enjoyment of such monies, lost interest on such monies and expenses and attorney's fees and costs in seeking to compel CAPITAL to fully perform its obligation under state law, all to their respective damage in amounts according to proof at trial and within the jurisdictional limitations of this Court.

102.    Plaintiffs, on behalf of themselves and putative Class I, II, and III members, seek an award of all monies owed resulting from CAPITAL'S violations, other damages according to proof, recovery of applicable penalties, interest as allowed by law, reasonable attorney's fees and costs of suit, injunctive relief, and any other permitted remedies.

**FIFTH CLAIM FOR RELIEF**
(Failure to Pay Overtime Wages in Violation of California Labor Code §§ 510, 1194 and 1198, and Section 3 Wage Order 5, "Hours and Days of Work")

103.    Each Plaintiff, on behalf of themselves and putative Class I, II, and III members, re-alleges and incorporates by reference the paragraphs above as though fully set forth herein.

104.    California Labor Code §§ 510 and 1198 and Section 3 of Wage Order 5 ("Hours and Days of Work") provide that employees in California shall not be employed more than eight (8) hours in any workday or forty (40) hours in any workweek unless they receive additional compensation beyond their regular wages in amounts specified by law.

105.    California Labor Code § 1194 states that "[n]otwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the

unpaid balance of the full amount of his minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees and costs of suit."

106. During the relevant period, CAPITAL failed to pay each Plaintiff and other putative Class I, II, and III members all overtime wages for all overtime worked.

107. As a direct result of CAPITAL'S violations alleged herein, each Plaintiff and other members of putative Class I, II, and III have suffered and continue to suffer substantial losses including, but not limited, to the use and enjoyment of such wages, lost interest on such monies and expenses and attorney's fees and costs in seeking to compel CAPITAL to fully perform its obligation under state law, all to their respective damage in amounts according to proof at trial and within the jurisdictional limitations of this Court.

108. Each Plaintiff, on behalf of themselves and putative Class I, II, and III members, seek an award of all monies owed resulting from CAPITAL'S violations, other damages according to proof, recovery of applicable penalties, interest as allowed by law, reasonable attorney's fees and costs of suit, injunctive relief, and any other permitted remedies.

**SIXTH CLAIM FOR RELIEF**
(Failure to Provide Meal Periods in Violation of California Labor Code §§ 226.7, 512, and Section 11 of Wage Order 5, "Meal Periods")

109. Each Plaintiff, on behalf of themselves and putative Class I, II, and III members, re-alleges and incorporates by reference the paragraphs above as though fully set forth herein.

110. California Labor Code §§ 226.7 and 512, and Section 11 of Wage Order 5 ("Meal Periods"), prohibit employers from employing a non-exempt employee for more than five hours without a meal period of at least thirty (30) minutes and for more than ten (10) hours without a second meal period. The employee is considered "on duty" and the meal period is considered time worked, unless the employee is relieved of all duty for an uninterrupted thirty (30) minute meal period

111. Section 11 of Wage Order 5 ("Meal Periods") provides that a non-exempt employee working more than five hours must be provided a meal period of not less than thirty (30) minutes, except when a work period of not more than six hours will complete the day's work and the meal period is waived by mutual consent of the employee and employer.

112.   During the relevant period, CAPITAL lacked a policy which directly and/or indirectly relieved each Plaintiff and other putative Class I, II, and III members of all duty for uninterrupted thirty (30) minute periods, and, in fact, had practices and procedures that impeded the members of Class I, II, and III, from taking such meal breaks.

113.   Pursuant to California Labor Code § 226.7(c), and Section 11 of Wage Order 5 ("Meal Periods"), if an employer fails to provide an employee a meal period in accordance with a state law, the employer shall pay the employee one hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided. This penalty is separate from the PAGA penalties discussed below.

114.   As a direct result of CAPITAL'S violations alleged herein, each Plaintiff and other members of putative Class I, II, and III have suffered and continue to suffer substantial losses including but not limited to the use and enjoyment of such wages, lost interest on such monies and expenses and attorney's fees and costs in seeking to compel CAPITAL to fully perform its obligation under state law, all to their respective damage in amounts according to proof at trial and within the jurisdictional limitations of this Court.

115.   Each Plaintiff, on behalf of themselves and putative Class I, II, and III members, seek an award of all monies owed resulting from CAPITAL'S violations, other damages according to proof, recovery of applicable penalties, interest as allowed by law, reasonable attorney's fees and costs of suit, injunctive relief, and any other permitted remedies.

**SEVENTH CLAIM FOR RELIEF**
(Failure to Provide Rest Periods in Violation of California Labor Code § 226.7,
and Section 12 of Wage Order 5, "Rest Periods")

116.   Each Plaintiff, on behalf of themselves and putative Class I, II, and III members, re-alleges and incorporates by reference the paragraphs above as though fully set forth herein.

117.   California Labor Code §226.7, and Section 12 of Wage Order 5 ("Rest Periods") provide that employers must authorize and permit non-exempt employees to take a rest period at the minimum rate of a net ten (10) consecutive minutes for each four (4) hour work period, or major fraction thereof.

118. During the relevant period, CAPITAL lacked a policy that directly and/or indirectly authorized and permitted each Plaintiff and other putative Class I, II, and III members to take rest periods, and, in fact, had practices and procedures that impeded the members of Class I, II, and III from taking such rest breaks.

119. Pursuant to California Labor Code § 226.7(c), Section 12 of Wage Order 5 ("Rest Periods"), if an employer fails to provide an employee a rest period in accordance with a state law, the employer shall pay the employee one hour of pay at the employee's regular rate of compensation for each workday that the rest period that the employer failed to authorize or permit.

120. As a direct result of CAPITAL'S violations alleged herein, each Plaintiff and other members of putative Class I, II, and III have suffered and continue to suffer substantial losses including but not limited to the use and enjoyment of such wages, lost interest on such monies and expenses and attorney's fees and costs in seeking to compel CAPITAL to fully perform its obligation under state law, all to their respective damage in amounts according to proof at trial and within the jurisdictional limitations of this Court.

121. Each Plaintiff, on behalf of themselves and putative Class I, II, and III members, seek an award of all monies owed resulting from CAPITAL'S violations, other damages according to proof, recovery of applicable penalties, interest as allowed by law, reasonable attorney's fees and costs of suit, injunctive relief, and any other permitted remedies.

**EIGHTH CLAIM FOR RELIEF**
(Failure to Pay Minimum Wages in Violation of California Labor Code §§ 1197, and 1198, and Section 4 of Wage Order 5, "Minimum Wages")

122. Each Plaintiff, on behalf of themselves and putative Class I, II, and III members, re-alleges and incorporates by reference the paragraphs above as though fully set forth herein.

123. California Labor Code §§ 1197 and 1198, Section 4 of Wage Order 5 ("Minimum Wages"), and Section 3 of Wage Order 5 ("Hours and Days of Work") provide that employees be paid at least the applicable minimum wage and overtime wages for regular time and overtime time suffered or permitted to work respectively.

124.   During the relevant period, CAPITAL directly and/or indirectly paid each Plaintiff and other putative Class I, II, and III members less than minimum wage.  CAPITAL further failed to satisfy minimum wage requirements and secretly paid a lower wage while purporting to pay the wage designated by statute or by contract to when it failed to pay the named Plaintiffs and Class members for "all hours worked" in performing work which was incidental to cleaning services (e.g. attending meetings, scheduling employees, commuting between job sites, etc.) and consequently underpaid its ICs and JWs for the actual hours each worked in violation of California Labor Code §§ 1197, and 1198, and Wage Order 5.

125.   California Labor Code § 1194 states "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of his minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees and costs of suit."

126.   As a direct result of CAPITAL'S violations alleged herein, each Plaintiff and other members of California-based ICs and JWs putative Class I, II, and III have suffered and continue to suffer, substantial losses including but not limited to the use and enjoyment of such monies, lost interest on such monies and expenses and attorney's fees and costs in seeking to compel CAPITAL to fully perform its obligation under state law, all to their respective damage in amounts according to proof at trial and within the jurisdictional limitations of this Court.

127.   Each Plaintiff, on behalf of themselves and putative Class I, II, and III members, seek an award of all monies owed resulting from CAPITAL'S violations, other damages according to proof, recovery of applicable penalties, interest as allowed by law, reasonable attorney's fees and costs of suit, injunctive relief, and any other permitted remedies.

## NINTH CLAIM FOR RELIEF
(Failure to Provide and Maintain Accurate Itemized Wage Statements in Violation of California Labor Code §§ 226, 1174, 1174.5, and Section 7 of Wage Order 5, "Records")

128.   Each Plaintiff, on behalf of themselves and putative Class I, II, and III members, re-alleges and incorporates by reference the paragraphs above as though fully set forth herein.

129.    California Labor Code § 226(a) provides that an employer must semimonthly or at the time of each payment of wages, furnish each of his or her employees an accurate itemized statement with the following nine pieces of information: (a) gross wages earned; (b) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission; (c) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; (d) all deductions; (e) net wages earned; (f) the inclusive dates of the period for which the employee is paid; (g) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number; (h) the name and address of the legal entity that is the employer; and (i) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.   The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.

130.    California Labor Code § 1174 and Section 7 of Wage Order 5 ("Records") require employers to maintain records including, but not limited to, employees' total hours worked, an accurate hourly rate, accurate computation of net wages and when employees begin and end each work period.

131.    Through CAPITAL'S conduct during the applicable statutory period including, but not limited to, the conduct set forth herein, CAPITAL knowingly and intentionally failed to provide accurate itemized wage statements reflecting, among other things, accurate hours worked, accurate gross wages earned, accurate hourly rate, accurate method of computation for net wages paid to Plaintiffs and Class Members, including but not limited to as a result of its knowing and intentional misclassification of the above name Plaintiffs as independent

contractors, and failed to maintain the records required by California Labor Code §§ 226(a) and 1174.

132.    California Labor Code § 226(e) obligates an employer who fails to maintain employment records in accordance with California Labor Code § 226(a) to pay each aggrieved employee one hundred dollars ($100) per pay period that the employer failure to maintain employment records up to a maximum of four thousand dollars ($4,000). This penalty is separate and distinct from the PAGA penalties discussed below.

133.    California Labor Code § 226(h) states "An employee may also bring an action for injunctive relief to ensure compliance with this section, and is entitled to an award of costs and reasonable attorney's fees."

134.    Each Plaintiff and other putative Class I, II, and III members suffered injuries as a result of CAPITAL'S intentional and knowing failure to provide to them and maintain the writings required by California Labor Code § 226(a) and Wage Order 5, as set forth herein. CAPITAL'S failure to provide and maintain accurate statements, as alleged herein, left each Plaintiff and other putative Class I, II, and III, on information an belief, without the ability to know, understand and question the hours worked and wages earned and due. As a direct result, Plaintiffs and members of putative Class I, II, and III have suffered and continue to suffer substantial injuries, losses and actual damages related to CAPITAL'S violations, including lost wages, lost interest on such wages, and expense and attorney's fees in seeking to compel Defendant to fully perform its obligations.

135.    Each Plaintiff, on behalf of themselves and putative Class I, II, and III members, seek an award of all monies owed resulting from CAPITAL'S violations, other damages according to proof, recovery of applicable penalties, interest as allowed by law, reasonable attorney's fees and costs of suit, injunctive relief, and any other permitted remedies.

**TENTH CLAIM FOR RELIEF**
(Failure to Pay Timely Wages During Employment in Violation of California Labor Code § 204)

136.    Each Plaintiff, on behalf of themselves and putative Class I, II, and III members, re-alleges and incorporates by reference the paragraphs above as though fully set forth herein.

137.     California Labor Code § 204 provides the timeframes by which employers must pay wages due to their employees.  Pursuant to California Labor Code § 204, other applicable laws and regulations, and public policy, an employer must timely pay its employees for all hours worked, "all wages…earned by any person in any employment are due and payable twice during each calendar month, in days designated in advance by the employer as the regular paydays."

138.     Through CAPITAL'S conduct during the applicable statutory period including, but not limited to, the conduct set forth herein, including that alleged on information and belief, CAPITAL, its agents, managers, superintendents, or officers, directly and/or indirectly failed to pay each Plaintiff and other putative Class I, II, and III members their wages within the time requirements set forth in California Labor Code § 204.

139.     Each Plaintiff, on behalf of themselves and putative Class I, II, and III members, seek an award of all monies owed resulting from CAPITAL'S violations, other damages according to proof, recovery of applicable penalties, interest as allowed by law, reasonable attorney's fees and costs of suit, injunctive relief, and any other permitted remedies.

**ELEVENTH CLAIM FOR RELIEF**
(Failure to Pay Wages Due Upon Termination in Violation of
California Labor Code §§ 201- 203)

140.     Each Plaintiff, on behalf of themselves and putative Class I, II, and III members, re-alleges and incorporates by reference the paragraphs above as though fully set forth herein.

141.     California Labor Code § 201 requires an employer who discharges an employee to pay all compensation due and owing to said employee immediately upon discharge. California Labor Code § 202 requires an employer to promptly pay compensation due and owing to said employee within seventy-two (72) hours of that employee's termination of employment by resignation.

142.     California Labor Code § 203 provides that if an employer willfully fails to pay compensation promptly upon discharge or resignation, as required under California Labor Code §§ 201-202, then the employer is liable for waiting time penalties in the form of continued compensation for up to thirty (30) work days.

143.    Through CAPITAL'S conduct during the applicable statutory period including, but not limited to, the conduct set forth herein, CAPITAL willfully failed to provide JOSE HERNANDEZ, JUAN HERNANDEZ, ALFARO, AGUILAR and GALINDO and other putative Class II and III members, whose employment with CAPITAL ended at any point in the four years preceding the filing of the complaint or tolling thereof, with all wages due and owing, including minimum wages, wages for "all hours worked", overtime wages, within the time requirements set forth in California Labor Code §§ 201(a) and 202(a).

144.    As a direct result of CAPITAL'S violations as set forth hereinabove, each Plaintiff and other members of putative Class I, II, and III have suffered and continue to suffer, substantial losses related to the use and enjoyment of such wages, as the result of CAPITAL'S failure to maintain records in compliance with the California Labor Code and Wage Order 5 including but not limited to the expenses and attorney's fees and costs in seeking to compel CAPITAL to fully perform its obligation under state law, all to their respective damage in amounts according to proof at trial and within the jurisdictional limitations of this Court.

145.    Each Plaintiff, on behalf of themselves and putative Class I, II, and III members, seek an award of all monies owed resulting from CAPITAL'S violations, other damages according to proof, recovery of applicable penalties, interest as allowed by law, reasonable attorney's fees and costs of suit, injunctive relief, and any other permitted remedies.

**TWELFTH CLAIM FOR RELIEF**
(California Private Attorney General Act ("PAGA"), California Labor Code §§ 2699 *et seq.*)

146.    Each Plaintiff, on behalf of themselves and putative Class I, II, and III members, re-alleges and incorporates by reference the paragraphs above as though fully set forth herein.

147.    At all times herein set forth, the Labor Code Private Attorneys General Act of 2004 ("PAGA") was applicable to Plaintiffs' employment by CAPITAL.

148.    At all times herein set forth, PAGA provided that any provision of law under the California Labor Code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency ("LWDA") for violations of the California Labor Code may, as an alternative, be recovered through a civil action brought by an aggrieved

employee on behalf of himself and other current or former employees pursuant to procedures outlined in California Labor Code § 2699.3.

149. A civil action under PAGA may be brought by an "aggrieved employee," who is any person that was employed by the alleged violator and against whom one or more of the alleged violations was committed.

150. Plaintiffs were employed by CAPITAL and the alleged violations were committed against them during their time of employment and they are, therefore, aggrieved employees. Plaintiffs and other employees are "aggrieved employees" as defined by California Labor Code § 2699(c) in that they are all current or former employees of CAPITAL, and one or more of the alleged violations were committed against them.

151. Pursuant to California Labor Code § 2699.3, an aggrieved employee, including Plaintiffs, may pursue a civil action arising under PAGA after the following requirements have been met:

(a) The aggrieved employee shall give written notice by certified mail (hereinafter "Employee's Notice") to the LWDA and the employer of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations.

(b) With respect to those Labor Code violations listed in Labor Code § 2699.5, the LWDA shall provide notice (hereinafter "LWDA Notice") to the employer and the aggrieved employee by certified mail that it does not intend to investigate the alleged violations within thirty (30) calendar days of the postmark date of the Employee's Notice. Upon receipt of the LWDA Notice, or if the LWDA Notice is not provided within thirty-three (33) calendar days of the postmark date of the Employee's Notice, the aggrieved employee may commence a civil action pursuant to California Labor Code Section 2699 to recover civil

penalties in addition to any other penalties to which the employee may be entitled.

(c) With respect to Labor Code violations other than those listed in Labor Code §2699.5, the employer may cure the alleged violation within the thirty-three (33) calendar days of the postmark date of the notice. The employer shall give written notice by certified mail within that period of time to the aggrieved employee or representative and the LWDA if the alleged violation is cured. If the alleged violation is not cured within the 33-day period, the employee may commence a civil action pursuant to Section 2699.

152. On January 21, 2014, Plaintiffs provided written notice by certified mail to the LWDA and CAPITAL of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations. (A true and correct copy of that written notice is attached hereto as Exhibit A.)

153. Prior to initiating this action, more than thirty-three (33) days passed since the mailing of Plaintiffs' letter and Plaintiffs did not and have not received a letter from the LWDA stating its intent to investigate Plaintiffs' claims against CAPITAL nor did Plaintiffs receive a letter from CAPITAL indicating that it had cured any of the alleged violations.

154. Plaintiff has satisfied the administrative prerequisites under California Labor Code § 2699.3(a) to recover civil penalties against CAPITAL for violations of California Labor Code stated above.

155. California Labor Code § 226.8 provides that an employer who has engaged in a pattern or practice of misclassifying employees as independent contractors shall be subject to a civil penalty of not less than ten thousand dollars ($10,000) and not more than twenty-five thousand dollars ($25,000) for each violation, in addition to any other penalties or fines permitted by law.

156. CAPITAL has engaged in a practice of misclassifying SANCHEZ, CAMEY, RAMIREZ, and other putative Class I members, as independent contractors, and SANCHEZ,

CAMEY, RAMIREZ and other putative Class I members seek recovery of civil penalties of not less than ten thousand dollars ($10,000) and not more than twenty-five thousand dollars ($25,000) for each violation.

157. California Labor Code § 225.5 provides that any employer that unlawfully withholds wages due any employee in violation of California Labor Code §§ 221, 223 shall be subject to civil penalties including one hundred dollars ($100) for the initial violation, and two hundred dollars ($200) for subsequent violations per employee per pay period plus twenty-five percent (25%) of the amount unlawfully withheld.

158. CAPITAL has unlawfully withheld wages from Plaintiffs and Class Members and is therefore subject to PAGA penalties related to its violation of California Labor Code §§ 221 and 223 in the amount of one hundred dollars ($100) for the initial violation, and two hundred dollars ($200) for subsequent violations per employee per pay period plus twenty-five percent (25%) of the amount unlawfully withheld.

159. California Labor Code § 558 provides that any employer who violates Chapter 1 of Part 2 of Division 2 of the Labor Code, or any provisions regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to civil penalties including fifty dollars ($50) for the initial violation, and one hundred dollars ($100) for subsequent violations per employee per pay period in which violation occurred.

160. CAPITAL has violated California Labor Code §§ 201-203, 226, 226.7, 510, 512, 1174, 1174.5, 1197, 1198, and Wage Order 5 and is therefore subject to civil penalties in the amount of fifty dollars ($50) for the initial violation, and one hundred dollars ($100) for subsequent violations per employee per pay period in which each of the violations occurred.

161. California Labor Code § 2699(f)(2) states that for all provisions of the California Labor Code for which a civil penalty is not specified the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

162. CAPITAL is therefore subject to PAGA penalties related to CAPITAL'S violation of California Labor §§ 204, 432.5, 2802, 2804 in the amount of one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

163. Pursuant to California Labor Code § 2699, Plaintiffs seek to recover civil penalties on behalf of themselves and other aggrieved current and former employees of CAPITAL. The exact amount of the applicable penalty is all in an amount to be shown according to proof at trial.

### THIRTEENTH CLAIM FOR RELIEF
(Unfair Business Practices in Violation of
California Business & Professions Code §§ 17200, *et seq.*)

164. Each Plaintiff, on behalf of themselves and putative Class I, II, and III members, re-alleges and incorporates by reference the paragraphs above as though fully set forth herein.

165. California Business & Professions Code § 17200 states: "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

166. During the relevant period, CAPITAL has engaged in unfair business practices in California by practicing, employing, and utilizing the unlawful employment practices outlined in the preceding paragraphs all in violation of California law and Wage Order 5. CAPITAL'S use of such practices constitutes an unfair business practice, unfair competition, and provides CAPITAL an unfair advantage over its competitors that do business in the State of California and comply with their obligations to properly provide employment conditions in compliance with the law and pay employees for all earned wages and compensation as required by law.

167. CAPITAL'S violations of the California Civil Code, the California Labor Code, and Wage Order 5 and its scheme to lower its payroll costs as alleged herein constitute unlawful business practices because these actions were done in a systematic manner over a

period of time to the detriment of each Plaintiff and other members of putative Class I, II, and III. The acts complained of herein occurred within the four (4) years preceding the filing of this complaint and include, but are not limited to, failure to: (i) classify janitorial crews properly as employees and present them with agreements not prohibited by law; (ii) pay proper wages including that of minimum and overtime wages and wages for all hours worked; (iii) indemnify employees; (iv) pay timely wages upon termination of employment; and (v) maintain accurate records and provide and maintain accurate itemized wage statements.

168. CAPITAL engaged in the above-mentioned acts of unlawful, deceptive, and unfair business practices prohibited by California Business and Professions Code §§ 17200, *et seq.*, including those set forth in the preceding paragraph, thereby depriving each Plaintiff and other members of putative Class I, II, and III the minimum working condition standards and conditions due, including those under the California Labor Code and Wage Order 5.

169. As a result of CAPITAL'S unfair competition and unlawful business practice, as alleged herein, each Plaintiff and other members of putative Class I, II, and III have suffered injury in fact and lost money or property. Plaintiffs have been deprived of the rights to wages and benefits due including those as alleged herein.

170. Pursuant to California Business & Professions Code § 17203, each Plaintiff is entitled to seek restitution of all wages and other monies owed on behalf of themselves and other members putative Class I, II, and III belonging to them, including interest thereon, which CAPITAL wrongfully withheld from them and retained for itself by means of its unlawful and unfair business practices.

171. Each Plaintiff and other members of putative Class I, II, and III are entitled to an injunction and other declaratory and equitable relief against such practices to prevent future damage for which there is no adequate remedy at law, and to avoid a multiplicity of lawsuits.

172. The illegal conduct alleged herein is continuing and there is no indication that CAPITAL will not continue such activity into the future. If CAPITAL is not enjoined from the conduct set forth in this Complaint, it will continue to fail to pay the wage and compensation

1  required to be paid and will fail to comply with other requirements of the California Labor

2  Code and Wage Order 5.

3  173.  As a direct and proximate result of CAPITAL'S conduct, CAPITAL has

4  received and will continue to receive monies that rightfully belong to members of the general

5  public who have been adversely affected by CAPITAL'S conduct, as well as to Plaintiffs by

6  virtue of unpaid wages and other monies.

7  174.  Each Plaintiff and other members of putative Class I, II, and III are entitled and

8  seek any and all available remedies including but not limited to restitution and recovery of

9  reasonable attorney's fees and costs pursuant to California Code of Civil Procedure § 1021.5,

10  California Business and Professions Code § 17200 *et seq.*, the substantial benefit doctrine,

11  and/or the common fund doctrine.

12  **PRAYER FOR RELIEF**

13  WHEREFORE, Plaintiffs pray for damages for judgment against CAPITAL as follows:

14  (a)  For a declaration that (i) SANCHEZ, CAMEY, RAMIREZ and the members of

15  putative Class I are employees of CAPITAL and that any agreement that

16  purports to state otherwise is null and void, and (ii) any agreement that purports

17  to waive the protections of the California Labor Code and Wage Order 5 are

18  null and void;

19  (b)  For injunctive relief to the extent permitted by law including, but not limited to,

20  as provided by the California Labor Code § 226(h), and California Business and

21  Professions Code § 17200 *et seq.*;

22  (c)  For restitution as provided by California Business and Professions Code

23  § 17200 *et seq.*;

24  (d)  For an order requiring CAPITAL to restore and disgorge all funds to each

25  affected person acquired by means of any act or practice declare by this Court to

26  be unlawful, unfair or fraudulent and, therefore, constituting unfair competition

27  under California Business and Professions Code § 17200 *et seq.*;

28

(e)      For an award of unpaid wages, including minimum and overtime wages, and wages for "all hours worked" to the extent permissible by law to each affected person;

(f)      For an award of any and all monies required to be paid and/or reimbursed to each Plaintiff and other members of putative Class I, II, and III including but not limited to monies required to be indemnified ;

(g)      For penalties to the extent permitted pursuant to the California Labor Code and Wage Order 5 including, but not limited to, waiting time penalties under California Labor Code § 203, penalties under California Labor Code § 226(e), penalties under California Labor Code §226.7, and PAGA penalties;

(h)      For an award of damages to the extent permissible by the California Labor Code and California Civil Code, including California Labor Code § 226(e) and California Civil Code §§ 1709, 1710, and 3333;

(i)      For an award of liquidated damages to the extent permissible by California Labor Code § 1194.2;

(j)      For pre-judgment and post-judgment interest to the extent permitted by law including, but not limited to, California Labor Code §§ 218.6 and 1194;

(k)      For reasonable attorney's fees and cost of suit and, to the extent permitted by law, including pursuant to California Labor Code §§ 218.5, 226, 1194, 2698 *et seq.*, and California Code of Civil Procedure § 1021.5; and

(l)      An award of such other and further relief as this Court deems proper and just.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial of this matter by jury to the extent authorized by law.

Dated: February 23, 2015         COREY, LUZAICH, DE GHETALDI,
                                       NASTARI & RIDDLE LLP

By:               /s/
           Amanda L. Riddle
           Attorneys for Plaintiffs

Dated: February 23, 2015         LAW OFFICES OF PARVIZ DARABI

By:               /s/
           Parviz Darabi
           Attorneys for Plaintiffs

## ADDITIONAL PLAINTIFFS' COUNSEL

Dania M. Alvarenga – Bar No. 244486
Alvarenga Law
1671 The Alameda Ste 307
San Jose, CA 95126