IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILLIANA SANCHEZ, ET AL.,<br>    Plaintiffs,<br>    v.<br>CAPITAL CONTRACTORS INC.,<br>    Defendant. | Case No. 14-cv-02622-MMC<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 110 |

Before the Court is defendant Capital Contractors Inc.'s ("Capital") Motion for Summary Judgment, filed November 7, 2016. Plaintiffs Lilliana Sanchez ("Sanchez"), Juan Carlos Ramirez ("Ramirez") and Yolanda Camey ("Camey") have filed opposition, to which Capital has replied. Having and read considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

In the operative complaint, the Second Amended Complaint, plaintiffs assert twelve claims for relief against Capital. Capital contends, and plaintiffs do not dispute, that each of plaintiffs' claims is dependent on a showing that plaintiffs are employees of Capital. By the instant motion, Capital argues it is undisputed that plaintiffs are not employees of Capital, but, rather, are independent contractors.

"Under California law, once a plaintiff comes forward with evidence that he provided services for an employer, the plaintiff has established a prima facie case that the relationship was one of employer/employee." Ruiz v. Affinity Logistics Corp., 754 F.3d 1093, 1100 (9th Cir. 2014) (internal quotation, alteration and citation omitted). "The

---

[1] By order filed December 13, 2016, the Court took the matter under submission.

burden then shifts to the employer to prove, if it can, that the presumed employee was an independent contractor." Id. (internal quotation and citation omitted); see Cristler v. Express Messenger Systems, Inc., 171 Cal. App. 4th 72, 84 (2009) (finding trial court did not err by instructing jury "[d]efendant has the obligation to prove that the [p]laintiffs were independent contractors"; holding plaintiffs "[do] not have the burden of disproving such status").

Here, Capital entered into contracts with other entities, such as 24-Hour Fitness and AutoNation, to provide those entities with cleaning services (see Stone Dep. 31:25-32:4, 34:6 - 35:25; 64:1-5) [2] and, in turn, entered into with each plaintiff an "Independent Contractor Agreemen" ("ICA") (see Cabrera Decl. Exs. 10, 11, 19, 20, 26).  Under such ICA, the signatory plaintiff was required to perform for Capital's above-referenced entity clients "[g]eneral cleaning, i.e., [d]usting, vacuuming, sweeping, general lavatory cleaning, etc." (see id. Ex. 10 ¶ 1; [3] Stone Dep. 64:1-5), and was authorized to "employ" others to "carry[ ] out the terms of [the] contract" (see Cabrera Decl. Ex. 10 ¶ 13).  It is undisputed that each plaintiff provided cleaning services to those entity clients and also supervised the work of other individuals such plaintiff had hired to assist him/her in providing those services.  (See Sanchez Dep. 46:21-24, 111:21-23; Ramirez Dep. 117:18-25, 120:20 - 121:25; Camey Dep. 157:2-16).[4]

//

---

[2] Excerpts from the deposition of Peter Stone, Capital's Chief Executive Officer, are attached as Exhibit 5 to the Declaration of Krista M. Cabrera and Exhibit A to the Declaration of Kevin R. Allen.

[3] Capital has submitted as exhibits six ICAs, two signed by Sanchez (see id. Exs. 10, 11), two signed by Ramirez (see id. Ex. 19, 20), one signed by Camey (see id. Ex. 26), and one signed by a non-party on behalf of Camey (see id. Ex. 25).  As the six ICAs do not appear to contain any material differences, the Court, when referring to the content of an ICA, will cite solely to the first of the above-referenced ICAs signed by Sanchez.  (See id. Ex. 10.)

[4] Excerpts from the depositions of Sanchez, Ramirez and Camey are attached as Exhibits 1, 2 and 3, respectively, to the Declaration of Krista M. Cabrera and as Exhibits B, C, and D, respectively, to the Declaration of Kevin R. Allen.

1  In support of the instant motion, Capital, noting the named parties to the above-
2  referenced ICAs are Capital and plaintiffs' respective businesses (see Cabrera Decl. Exs.
3  10, 11, 19, 20, 25, 26), argues plaintiffs cannot meet their initial burden because,
4  according to Capital, those businesses, and not plaintiffs as individuals, provided the
5  above-referenced services to Capital.  As set forth below, the Court is not persuaded.
6  Capital's argument assumes plaintiffs' respective businesses are legally distinct
7  entities from plaintiffs as individuals.  The businesses owned by Sanchez and Ramirez,
8  however, were, as Capital acknowledges, sole proprietorships (see Def.'s Mot. at 12:3-4),
9  and, although Capital asserts Camey operated her business as a corporation (see id.),
10 the only documents in the record that pertain to the status of Camey's business at the
11 time she provided services to Capital describe that business as a sole proprietorship (see
12 Cabrera Decl. Exs. 23, 26).  Under California law, "[a] sole proprietorship is not a legal
13 entity itself"; rather, "the term refers to a natural person who directly owns the business."
14 See Providence Washington Ins. Co. v. Valley Forge Ins. Co., 42 Cal. App. 4th 1194,
15 1199-1200 (1996).  Consequently, the services rendered under the subject ICAs were, as
16 a matter of law, services rendered by the plaintiffs.
17 Accordingly, the Court finds Capital has failed to show plaintiffs cannot establish a
18 prima facie case.  See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1106
19 (9th Cir. 2000) (holding party seeking summary judgment meets initial burden by either
20 "produc[ing] evidence negating an essential element of the nonmoving party's case" or
21 "show[ing] that the nonmoving party does not have enough evidence of an essential
22 element of its claim").
23 The Court next considers whether Capital has shown that plaintiffs, when
24 performing the services rendered to Capital, were, as a matter of law, independent
25 contractors.
26 An independent contractor is defined in the California Labor Code as "any person
27 who renders service for a specified recompense for a specified result, under the control
28 of his principal as to the result of his work only and not as to the means by which such

result is accomplished." See Cal. Lab. Code § 3353. "Due to the numerous variables that can inform the employee/independent contractor distinction, [the California] Supreme Court has supplemented [the] statutory definition[ ] with a host of classification factors." See Cristler, 171 Cal. App. 4th at 77. Specifically, in S.G. Borello & Sons Inc. v. Department of Industrial Relations, 48 Cal. 3d 341 (1989), the California Supreme Court held "[t]he principle test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired," see id. at 350, and, in so holding, identified nine non-exhaustive "secondary" factors for courts to consider, see id. at 350-51, 354, as well as additional factors identified in other jurisdictions that may be "logically pertinent" to the determination, see id. 354-55.

   Here, there is no dispute that the "result desired" by Capital, see id. at 350, was that plaintiffs, either themselves and/or through individuals hired by plaintiffs, provide cleaning services to Capital's clients. Further, plaintiffs' deposition testimony, as well as statements made in their respective declarations, if credited by the trier of fact, would support a finding that Capital exercised significant control over the manner and means by which plaintiffs provided those cleaning services and supervised the workers plaintiffs hired. (See, e.g., Sanchez Decl. ¶¶ 1, 4 (averring Capital gave her "written instructions regarding the scope of work," which instructions were "very specific," such as how often to "wipe" equipment and the particular "tool" to be used for a given task); Ramirez Decl. ¶¶ 2, 5, Ex. 2 (averring he was "told by Capital what type of work to perform," including by written instructions as to tasks that were "to be completed in [their] entirety," such as cleaning restrooms in six sequential steps and cleaning shower areas in nine sequential steps); Ramirez Dep. 134:22-25 (testifying he was "not allowed" by Capital to "have contact" with Capital's clients to which he provided cleaning services); Camey Dep. 121:20-22 (testifying that only Capital had "access to the clients" and that she had no "communication" with client); id. 163:4-12 (testifying Capital "gave the orders" as to how work was to be performed); id. 182:4-8 (testifying that when she supervised her workers,

1      she was required by Capital to do so during hours specified by Capital).)

2      Although the ICAs allowed plaintiffs to hire others and each plaintiff did, such
3   circumstance does not compel a finding that Capital did not exercise control over the
4   manner and means in which the services rendered under the ICAs were to be provided.
5   As the Ninth Circuit, applying California law, has explained, where a plaintiff is authorized
6   to and does hire others to perform work under his/her contract with the defendant, a trier
7   of fact can conclude such plaintiff nonetheless is an employee, provided the defendant
8   "retain[s] ultimate discretion to approve or disapprove of those helpers" and subjects the
9   plaintiff's employees to the "same degree of control" as it did the plaintiff.  See Ruiz, 754
10  F.3d at 1103.  Here, plaintiffs have offered evidence sufficient to support a finding that
11  Capital exercised significant control over plaintiff's employees.  (See, e.g., Sanchez Dep.
12  112:20-24, 113:9 - 114:6 ¶ 3 (testifying Capital's "rep," when on premises of Capital's
13  clients, trained Sanchez's employees as to how to perform cleaning services); id. 121:10
14  - 124:19 (testifying Capital required it be advised before Sanchez could terminate an
15  employee and that it would decide if such worker could be terminated); Sanchez Decl.
16  ¶ 4 (averring Capital determined "exactly how many workers" she could use, and, at
17  times, prohibited her from using "certain workers" on "a certain job"); Ramirez Dep.
18  119:1-3, 159:11-17 (testifying Capital "demanded" he hire more workers, that Capital
19  "decided 90 percent of the time who got hired" by him, and that Capital told him to "fire
20  some of the workers"); Ramirez Decl. ¶ 3 (averring that, on over forty occasions, Capital
21  "told [him] which worker had to be placed on a certain job or that a certain worker could
22  not be used for a certain job"); Camey Dep. 163:4-12 (testifying that, although she hired
23  workers, Capital employees "were the ones who gave the orders for what they had to
24  do").)

25     Additionally, plaintiffs have offered evidence that some of the secondary factors
26  likewise support a finding of employment.  First, the ICAs expressly provide that the
27  "term" of the relationship is "open" (see Cabrera Decl. Ex. 10 ¶ 2), i.e., "there was no
28  contemplated end to the service relationship."  See Ruiz, 754 F.3d at 1105; State

5

Compensation Ins. Fund v. Brown, 32 Cal. App. 4th 188, 203 (1995) (holding where "contracts are indefinite," such fact "gives the relationship the permanence associated with employment"). Second, plaintiffs testified that they and the individuals they hired were required by Capital to wear uniforms marked with Capital's logo. (See Sanchez Dep. 173:18 - 174:4; Ramirez Dep. 133:23-25, 135:25 - 136:18; Camey Dep. 122:1-6); Estrada v. FedEx Ground Package System, Inc., 154 Cal. App. 4th 1, 12 (2007) (holding evidence supporting finding of employment included defendant's requirement that plaintiffs "wear uniforms . . . obtained from [defendant] and marked with [defendant's] logo"). Third, plaintiffs testified they were paid at a non-negotiable hourly rate, and that the hours were set in advance by Capital. (See Sanchez Dep. 81:16-25; 135:12-25, 137:25 - 138:9; Ramirez Dep. 133:11-19, 183:3-25; Ramirez Decl. ¶ 6; Camey Decl. ¶ 6; Camey Dep. 153:3-13); Alexander v. FedEx Ground Package System, Inc., 765 F.3d 981, 996 (9th Cir. 2014) (holding "hourly payment" is factor "favor[ing] employee status"). Fourth, because Capital primarily, if not exclusively, obtains revenue by charging its clients for cleaning services rendered by the persons who enter into ICAs (see Stone Dep. 35:1 - 36:10, 77:21 - 79:17), a trier of fact reasonably could find the work performed by plaintiffs was "an essential part of the regular business" of Capital, see Narayan v. EGL, Inc., 616 F.3d 895, 901 (9th Cir. 2010) (holding trier of fact could find plaintiffs were employees where, inter alia, "services provided by [plaintiffs] were an essential part of the regular business of [defendant]").

The Court acknowledges that Capital has submitted evidence, undisputed by plaintiffs, that would support a finding that plaintiffs were independent contractors. At least two plaintiffs, for example, provided the equipment they used to perform cleaning services (see Sanchez Dep. 172:15-24; Camey Dep. 122:8-16, 171:4-10), and at least two plaintiffs held themselves out as being in business for themselves, in that their sole proprietorships advertised on the internet and in other forums (see Ramirez Dep. 33:21 - 34:12, 38:18 - 39:3; Camey Dep. 55:4-12). See Borello, 48 Cal. 3d at 351 n.5, 354 (identifying, as "indicia" of independent contractor status, plaintiff's "supplying the tools or

6

instrumentalities used in the work" and "holding out to be in business for himself"). Additionally, at least two plaintiffs acknowledged that under the ICAs, they had an opportunity to earn a profit or incur a loss based on their managerial skills. (See Sanchez Dep. 153:20-23; Ramirez 119:18-21); Borello, 48 Cal. 3d at 355 (identifying, among factors to consider, "alleged employee's opportunity for profit or loss depending on his managerial skill"). In light of the other evidence identified above, however, the Court cannot conclude the instant case is one of the "rare case[s] where the various factors . . . point with unanimity in one direction." See Narayan, 616 F.3d at 901 (internal quotation and citation omitted).

In sum, the Court finds a triable issue of fact exists as to plaintiffs' status, and, accordingly, Capital is not entitled to summary judgment.

## CONCLUSION

For the reasons stated above, Capital's motion for summary judgment is hereby DENIED.

**IT IS SO ORDERED.**

Dated: January 4, 2017

MAXINE M. CHESNEY
United States District Judge