IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILLIANA SANCHEZ, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>CAPITAL CONTRACTORS, INC.,<br><br>Defendant. | Case No. 14-cv-02622-MMC<br><br>**ORDER DENYING PLAINTIFFS'<br>MOTION FOR CLASS CERTIFICATION** |

Before the Court is the "Motion for Class Certification," filed November 11, 2016, by plaintiffs Lilliana Sanchez, Yolanda Camey and Juan Carlos Ramirez. Defendant Capital Contractors, Inc. ("Capital") has filed opposition, to which plaintiffs have replied. Additionally, Capital, with leave of court, has filed a surreply. Having read and considered the parties' respective written submissions, the Court hereby rules as follows.[1]

## BACKGROUND

In the operative complaint, the Second Amended Complaint ("SAC"), plaintiffs allege that Capital "provides cleaning services to major industrial clients throughout California." (See SAC ¶ 11.) Plaintiffs further allege that each of them entered into an "Independent Contractor Agreement" ("ICA"), under which each such plaintiff agreed to provide certain services to Capital (see SAC ¶¶ 18-19, 26); specifically, plaintiffs allege, they agreed to "perform the janitorial services themselves for Capital's clients and/or engage janitorial workers . . . to perform the janitorial services for Capital's clients" (see SAC ¶ 12).

Plaintiffs allege that Capital, consistent with the title of the written agreement each

---

[1] By order filed April 18, 2017, the Court took the matter under submission.

1  plaintiff signed, classified plaintiffs as "independent contractors." (See id.) According to
2  plaintiffs, each of them, during the period of time in which they provided services to
3  Capital, "should have been properly classified as a non-exempt hourly employee of
4  Capital" (see SAC ¶¶ 14-16), and that, during the respective periods of time in which they
5  state they were misclassified, Capital did not provide them with rights available to an
6  employee under California law, such as paying them "overtime wages" and providing
7  "rest breaks" (see SAC ¶ 40). Plaintiffs bring their claims on behalf of a putative class
8  consisting of persons who contracted in California to provide "cleaning services at
9  Capital's clients' properties" and who were "misclassified" by Capital as independent
10 contractors. (See SAC ¶ 42.) Plaintiffs refer to themselves and the members of the
11 proposed class collectively as "ICs" (see SAC ¶¶ 12, 18-23) and seek on behalf of all
12 plaintiffs, both named and proposed, declaratory/injunctive and monetary relief.
13     In its answer, Capital denies that plaintiffs and the members of the putative class
14 were employees. (See Answer ¶¶ 14-16, 20.)

## DISCUSSION

16 By the instant motion, plaintiffs, pursuant to Rule 23 of the Federal Rules of Civil
17 Procedure, seek an order certifying a class for purposes of resolving their claims, which
18 are defined by plaintiffs as their "entitlement to 1) minimum and overtime wages, 2) meal
19 and rest period periods, 3) reimbursement of business expenses and pay deductions, 4)
20 indemnity from Capital, 5) restitution under Cal. Bus. & Prof. Code § 17200, et seq., 6)
21 the adequacy of Capital's recordkeeping and wage statement practices . . ., and 7)
22 whether a 'good faith' dispute (so as to avoid . . . 'waiting time' penalties) exists." (See
23 Pls.' Mot. at 15:18-24). The class proposed by plaintiffs consists of "[a]ll persons who,
24 from April 25, 2010 to final judgment, have been (a) employed by Capital . . . pursuant to
25 contract in the State of California to perform cleaning services at Capital's clients'
26 locations; and (b) classified as an 'independent contractor' while performing cleaning
27 services and/or supervising the performance of cleaning services at Capital's clients'
28 properties." (See id. at 2:7-15.)

A district court may not certify a class unless the plaintiff has met the four requirements set forth in Rule 23(a): "'(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.'" See Wal-Mart Stores v. Dukes, 564 U.S. 338, 345 (2011) (quoting Fed. R. Civ. P. 23(a)). Additionally, the district court must find the plaintiff has "satisf[ied] at least one of the three requirements listed in Rule 23(b)." See id. Here, plaintiffs seek certification under Rules 23(b)(2) and 23(b)(3), the additional requirements of which the Court first addresses, as set forth below.

**A. Rule 23(b)(2)**

Rule 23(b)(2) provides for certification of a class where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." See Fed. R. Civ. P. 23(b)(2). "Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." Zinser v. Accufix Research Institute, Inc., 253 F.3d 1180, 1195 (9th Cir. 2001). To obtain certification under Rule 23(b)(2), the plaintiff must show "a single injunction or declaratory judgment would provide relief to each member of the class." See Wal-Mart, 564 U.S. at 360.

Here, plaintiffs seek a "judicial declaration that ICs are employees of Capital, and corresponding injunctive relief -- a judicial order directing Capital to cease its unlawful practice of classifying ICs as independent contractors and failing to provide the protections afforded employees under the California Labor Code." (See Pls.' Mot. at 17:6-9.)

A plaintiff who seeks to certify a class under Rule 23(b)(2) must have standing to seek the declaratory and/or injunctive relief sought on behalf of the class. See Bates v. United Parcel Service, 511 F.3d 974, 983–85 (9th Cir. 2007) ("In a class action, standing

is satisfied if at least one named plaintiff meets the [standing] requirements."). To do so, the plaintiff "must demonstrate that he is realistically threatened by a repetition of the violation." See Armstrong v. Davis, 275 F.3d 849, 860-61 (9th Cir. 2001) (internal quotation and citation omitted); see also Hodgers–Durgin v. De La Vina, 199 F.3d 1037, 1044–45 (9th Cir. 1999) (dismissing plaintiffs' claims for declaratory and injunctive relief brought on behalf of class, where named plaintiffs failed to show "likelihood of future injury" from challenged policy).

As Capital has pointed out, plaintiffs are "former alleged employees." (See Answer at 17:5.) Plaintiffs point to no evidence that they are "realistically threatened" by Capital's classification decisions and alleged violations of the California Labor Code, see Armstrong, 275 F.3d at 860-61, as they arguably might be if they "were in the process of seeking reinstatement to their former positions, or seeking work from that employer," see Walsh v. Nevada Dep't of Human Resources, 471 F.3d 1033, 1037 (9th Cir. 2006). Under such circumstances, plaintiffs have failed to show that any of them has any likelihood of being injured in the future by Capital's practices. See id. (holding former employee who did not claim "any interest in returning to work" for defendant employer not entitled to seek injunctive relief regarding workplace policies). Consequently, plaintiffs are not entitled to seek on behalf of a class declaratory or injunctive relief with respect to Capital's practices.

Accordingly, irrespective of whether plaintiffs would be able to satisfy the four prerequisites set forth in Rule 23(a), plaintiffs have failed to show certification under Rule 23(b)(2) is proper.

**B. Rule 23(b)(3)**

Rule 23(b)(3) provides for certification of a class where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." See Fed. R. Civ. P. 23(b)(3). Here, plaintiffs seek to establish that the members of the proposed class should

have been classified as "employees" of Capital (see SAC ¶¶ 25-26) and, thus, that Capital wrongfully failed to provide them with the statutory benefits to which employees are entitled under California law, such as overtime pay, meal/rest breaks, reimbursement for necessary expenses, and timely payment of wages upon termination of employment.

### 1. Propriety of Classification as Independent Contractor

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action," Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804, 809 (2011) (quoting Rule 23(b)(3)).

Here, each claim as to which plaintiffs seek to proceed on behalf of the proposed class is dependent on a finding that Capital should have classified the ICs as employees rather than independent contractors. Under California law, "[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." See Tieberg v. Unemployment Ins. Appeals Board, 2 Cal. 3d 943, 946 (1970).[2]

As explained by Capital's Rule 30(b)(6) witness, upon whose testimony plaintiffs rely, the client, at the time it contracts with Capital, provides Capital with the "scope of work" the client desires, "such as floor care" or "bathroom cleaning" (see Salassi Decl. Ex. B at 34:6-11), and that Capital, in turn, enters into contracts with the ICs, under which the ICs perform the "negotiated scope of work" (see id. Ex. B at 77:21 - 78:3). Consequently, in contracting with the ICs, "the result desired" by Capital, see Tieberg, 2

---

[2] Courts applying California law also consider "secondary indicia of the nature of a service relationship," including "(a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee." See Alexander v. FedEx Ground Package System, Inc., 765 F.3d 981, 988-89 (9th Cir. 2014).

Cal. 3d at 946, is that the ICs, either themselves and/or through others they hire, provide to Capital's clients the janitorial services desired by those clients.

In arguing one can determine on a classwide basis whether Capital has the right to control the manner and means by which the ICs accomplish the result desired, plaintiffs rely primarily on a form agreement in which the relationship between Capital and the ICs is defined, namely, the ICA.

Where there exists a form agreement defining the rights of the parties thereto, the agreement is "a significant factor for consideration" at the merits stage with respect to the right to control, see id. at 952; "what matters is the extent of control which, by the agreement, the master may exercise over the details of the work," see Ayala v. Antelope Valley Newspapers, Inc., 59 Cal. 4th 522, 534 (2014); see also Alexander, 765 F.3d at 989 (holding, where plaintiffs demonstrated defendant's form agreement "unambiguously allowed [defendant] to exercise a great deal of control over the manner by which [plaintiffs] [did] their jobs," such evidence "strongly favor[ed]" plaintiffs' position as to right of control).

"At the class certification stage," however, "the importance of a form contract is not in what it says, but that the degree of control it spells out is uniform across the class," see Ayala, 59 Cal. 4th at 534, "[t]he relevant question [being] whether the scope of the right to control, whatever it might be, is susceptible to classwide proof," see id. at 537. In that regard, "the key" issue at the class certification stage is "whether there is evidence a hirer possessed different rights to control with regard to its various hirees, such that individual mini-trials would be required." Id. at 536.[3]

---

[3] In determining whether class certification is appropriate, California courts apply § 382 of the California Code of Civil Procedure. Under § 382, a plaintiff must show common issues of fact or law predominate over individual issues, see Brinker Restaurant Corp. v. Superior Court, 53 Cal. 4th 1004, 1021 (2012), which a plaintiff seeking certification under Rule 23(b)(3) likewise must show. Accordingly, for purposes of the instant analysis, the Court considers state court decisions persuasive authority on the issue of predominance, as do the parties. (See, e.g., Pls.' Reply at 11:11-13; Def.'s Opp. at 23:5-7.)

In support of the instant motion, plaintiffs point out that the ICA contains a provision governing Capital's control over the ICs' work and, based thereon, contend the question of whether the ICs are in fact employees is a question common to all class members. The provision on which plaintiffs rely, as found in versions of the ICA in effect up to August 2016, is as follows: "Capital may take any reasonable and necessary actions to ensure that the work conforms to the contract, including the right of inspection." (See Salassi Decl. Ex. E ¶ 4, Ex. B at 112:8 - 113:4 and Ex. 17 attached thereto; see also Cabrera Decl. Exs. 19 ¶ 4, 20 ¶ 4, 25 ¶ 4.) In the present version of the ICA, in effect as of August 17, 2016, the provision is as follows: "Capital reserves the right to take any reasonable and necessary action to ensure that the Services conform to the Agreement, including but not limited to the right to inspect Customer premises as to the requirements of Customer." (See Cabrera Decl. Ex. 27 ¶ 2c.) The parties agree that Capital, under the above-quoted provision, can require ICs to "conform to the contract," i.e., "the Agreement" between Capital and its client. (See Pls.' Mot. at 1:22-23, 5:15-17 (stating "Capital mandate[s] whatever terms were negotiated [with its clients] down to the ICs" and that Capital, as "guarantor of its customers' satisfaction," must "necessarily ensure the IC's performance"); Def.'s Opp. at 13:2-3, 14:4-5 (stating ICs have "the responsibility" to "meet expectations outlined by the customer").) The parties disagree, however, as to whether said provision entitles Capital to exercise as to each IC the same degree of control.

In light of that disagreement, the question at this stage is whether "the degree of control" Capital has, in light of its contractual right to require each IC to "conform" to the agreement between Capital and the client for whom the IC provides janitorial services, is "uniform across the class," see Ayala, 59 Cal. 4th at 534, or is "subject to variations that would defy classwide proof and prove unmanageable," see id. at 538.[4] The Court finds

---

[4]To the extent plaintiffs cite to another provision of the ICA, one which "requires [Capital's] contractors [to] conduct themselves with the same Code of Conduct [Capital] requires of [itself]" (see Salassi Decl. Ex. E § 24), plaintiffs' reliance is unavailing as the Code of Conduct is unrelated to the manner by which ICs or their employees perform

7

the subject provision affords Capital a right to control that is coextensive with the individual client's requirements. In light thereof, the Court further finds Capital's right of control is subject to a degree of variance inconsistent with commonality, as the record establishes that Capital's clients varied greatly in their requirements, with some spelling out in detail the manner in which the work was to be performed and others stating essentially no more than the desired result. (See Salassi Decl. Ex. B at 34:6-9) (explaining "Scope of Work" section of Capitol's contract with client is left blank because "[t]here's no typical scope of work").) "Some Capital customers," for example, "have requested detailed written tasks to be performed by the janitorial workers," whereas "other customers simply request the presence of janitorial workers for a certain period." (See Stone Decl. ¶ 5.c.)

Plaintiffs next argue that, irrespective of the above-discussed provision of the ICA, the degree of control Capital exercises is, in practice, the same for all ICs. In support thereof, plaintiffs rely exclusively on their own depositions and declarations, in which each of the three plaintiffs describes what plaintiffs argue is a similar and substantial degree of control exercised by Capital.[5] (See, e.g., Salassi Decl. Ex. G (Sanchez Decl.) ¶¶ 1, 4 (averring Capital gave her "written instructions regarding the scope of work," which instructions were "very specific," such as how often to "wipe" equipment and the particular "tool" to be used for a given task); id. Ex. A (Sanchez Dep.) 121:10 - 124:19 (testifying Capital required her to advise Capital before she could terminate an employee and that Capital would decide if such worker could be terminated); id. Ex. H (Ramirez Decl.) ¶¶ 2, 5 & Ex. 2 attached thereto (averring he was "told by Capital what type of

---

their janitorial work (see id. Ex. F) (requiring ICs to comply with prevailing wage requirements and to retain documents relating to pending litigation; prohibiting ICs from accepting bribes)).

[5]Although, for purposes of assigning "liability," the ICA states "Capital shall have no right of control over the manner in which the work is to be done" (see Salassi Decl. Ex. E § 5), no party has cited to such language, which, in any event, as set forth below, appears to be inconsistent with how Capital viewed its right to oversee the ICs' work.

8

1  work to perform," including by written instructions specifying tasks that were "to be
2  completed in [their] entirety," such as cleaning restrooms in six sequential steps and
3  cleaning shower areas in nine sequential steps); id. ¶ 3 (averring that, on over forty
4  occasions, Capital "told [him] which worker had to be placed on a certain job or that a
5  certain worker could not be used for a certain job"); Allen Decl. Ex. B (Camey Dep.)
6  158:21-25 (testifying "Capital was the one that indicated what had to be done and in what
7  way [she and her employees] had to do the cleaning").)[6]

8  Assuming, arguendo, plaintiffs' experiences can be characterized as "uniform,"
9  see Ayala, 59 Cal. 4th at 533, plaintiffs nonetheless fail to offer evidence to support a
10 finding that their experiences were substantially similar to those of other ICs. Indeed, as
11 Capital points out, plaintiffs offer no evidence as to the experiences of any other IC.
12 Moreover, Capital has offered declarations from four individuals who, Capital asserts and
13 plaintiffs do not disagree, are putative class members, each of whom states, in essence,
14 that Capital has not controlled the manner by which those ICs and their employees
15 accomplish the result desired. (See Cabrera Decl. Ex. 6 (Rodriguez Decl.) ¶¶ 7, 9
16 (averring "Capital is not involved in managing, supervising or disciplining [his] employees"
17 and "has never been involved in determining the number of employees who clean each
18 building, their work schedules, or the exact hours spent performing such cleaning
19 services"); id. Ex. 7 (Ojeda Decl.) ¶ 5 (averring he is "responsible for supervising and
20 overseeing the work of [his] employees and contractors when they are performing their
21 duties"); id. Ex. 8 (Hatridge Decl.) ¶ 8 (averring "Capital has never been involved in
22 determining the number of [her] employees who clean at [client's site], their work

---

[6]The similarity of the three plaintiffs' experiences appears to be the result of their having shared a common Capital client, 24 Hour Fitness (see Salassi Decl. Ex. A (Sanchez Dep.) 21:9 - 25:17, 109:8-22; id. Ex. C (Ramirez Dep.) 124:22 - 127:13; Allen Decl. Ex. B (Camey Dep.) 121:4-7, 157:25 - 158:15)), which client provided detailed instructions to Capital as to the cleaning of gym facilities (see Cabrera Decl. Ex. 5 at 40:1-18, 49:25 - 50:5 (Capital's Rule 30(b)(6) witness testifying 24 Hour Fitness's agreement with Capital required cleaners to use only "client-approved chemicals and materials" and identified the "specific scope of work for the different areas of the gym," including particular tasks to be performed and frequency thereof)).

9

schedules, or how any . . . employee performs his or her cleaning services"); id. Ex. 9 (Britt Decl.) ¶¶ 6-7 (averring he "handles all issues and decisions relating to the hiring, training, compensating, work assignments, personnel matters, discipline and firing of [his] employees" and "Capital was not involved in any of these decisions"; further averring "Capital was never involved in determining . . . where or how any . . . employee performs his or her cleaning services").)[7] Consequently, plaintiffs have failed to show Capital, in practice, exercises a uniform degree of control over the ICs with which it contracts.

In sum, under the above-quoted provision on which plaintiffs rely, the degree of control Capital has over an IC varies depending on the extent of control, if any, that is set forth in each individual contract between Capital and its client. Under such circumstances, the trier of fact would be required to consider each client's contract with Capital and each IC's experiences thereunder to determine whether the IC assigned to such contract was subject to Capital's control over the manner and means of accomplishing the result desired.

Accordingly, plaintiffs have failed to show a determination as to employment status is amenable to classwide proof.[8]

### 2. Overtime, Meal Break and Rest Break Claims

Even assuming employment status could be determined classwide, plaintiffs have not shown their claims alleging Capital's failures to provide overtime pay, meal breaks and rest breaks are appropriate for determination on a classwide basis.

Plaintiffs take the position that, if they show the ICs were misclassified as

---

[7] It would appear that none of the ICs on which Capital relies performed services for 24 Hour Fitness or a similar gym facility. (See id. Ex. 6 (Rodriguez Decl.) ¶ 5); id. Ex. 7 (Ojeda Decl.) ¶ 9.b; id. Ex. 8 (Hatridge Decl.) ¶ 7); id. Ex. 9 (Britt Decl.) ¶¶ 3, 8.)

[8] In light of such finding, the Court has not considered herein whether the secondary factors are subject to classwide proof. See Ayala, 59 Cal. 4th at 540 (holding trial court's finding that "substantial variations in control exist[ ]" is "sufficient to justify denying class certification and thus obviate[ ] any need for further inquiry [into secondary factors]"); cf. Zinser, 253 F.3d at 1189 (holding if "main issues in a case require the separate adjudication of each class member's individual claim," certification under Rule 23(b)(3) is inappropriate even if "there may be common issues" in case).

10

independent contractors, "Capital would be automatically liable" to the class on the overtime, meal break and rest break claims. (See Pls.' Reply at 7:3-4.) Under California law, however, "simply having the status of an employee does not make the employer liable for a claim for overtime compensation or denial of breaks." Sotelo v. Medianews Group, Inc., 207 Cal. App. 4th 639, 654 (2012). Rather, "[a]n individual employee establishes liability by proving actual overtime hours worked without overtime pay, or by proving that he or she was denied rest or meal breaks." See id. Although a class "may establish liability by proving a uniform policy or practice by the employer that has the effect on the group of making it likely that group members will work overtime hours without overtime pay, or [will] miss rest/meal breaks," id., here, as set forth below, no such showing has been made.

Under California law, an employee is entitled to overtime pay for hours worked more than "eight (8) hours in any workday" or more than "40 hours in the workweek." See Cal. Code Regs., tit. 8, § 11050(3)(A)(1). Also, under California law, an employee is entitled to a meal break if the employee works "more than five (5) hours," see Cal. Code Regs, tit. 8, § 11050(11)(A), and to a rest break if he works at least "three and one-half (3 1/2) hours," see Cal. Code Regs., tit. 8, § 11050(12)(A). Plaintiffs, however, fail to cite any evidence that could support a finding that Capital has any uniform policy or practice that has the effect of requiring ICs to work for Capital more than eight hours a day or more than forty hours in a week, thereby entitling them to overtime pay. Nor have plaintiffs submitted any evidence to support a finding that Capital has any uniform policy or practice that has the effect of requiring ICs to work for Capital more than five hours a day, thereby entitling them to a meal break, or the effect of requiring them to work for Capital at least three and a half hours per day, thereby entitling them to a rest break. In the absence of any such evidence, a trier of fact would be required to consider testimony from each class member in order to determine whether he/she worked for Capital more than eight hours in a day and whether such class member worked for Capital the requisite number of hours to entitle him/her to meal and rest breaks. Compare Sotelo,

11

1 207 Cal. App. 4th at 655 (holding plaintiffs not entitled to proceed with overtime, meal
2 break and rest breaks claims on behalf of class of newspaper carriers, where plaintiffs
3 failed to make "factual showing" that defendant had any "uniform practices or policies"
4 with respect to overtime, meal breaks or rest breaks) with Jaimez v. DAIOHS USA, Inc.,
5 181 Cal. App. 4th 1286, 1300 (2010) (finding plaintiffs entitled to proceed with meal and
6 rest break claims on behalf of class of persons who delivered water, where plaintiffs
7 submitted evidence showing defendant "create[d] routes and delivery schedules which it
8 pressured [class members] to complete in 8 hours," thereby discouraging meal and rest
9 breaks).

The instant case involves a further factual complication that undermines plaintiffs' effort to show common issues predominate. Specifically, each of the named plaintiffs and each of the other IC declarants has acknowledged that, at the time he/she provided services for Capital, he/she also provided services for other companies. (See, e.g., Cabrera Decl. Ex. 3 (Camey Dep.) 120:11 - 121:24 (describing differences between her interactions with Capital and other companies with which she contracted to provide janitorial services); id. Ex. 6 (Rodriguez Decl.) ¶ 4 (stating his company "primarily cleans office buildings for Capital and other clients"); see also Salassi Decl. Ex. A (Sanchez Dep.) 82:6-16; id. Ex. C (Hernandez Dep.) 42:25 - 43:3, 122:24 - 123:4); Cabrera Decl. Ex. 7 (Ojeda Decl.) ¶ 6; id. Ex. 8 (Hatridge Decl.) ¶ 7; id. Ex. 9 (Britt Decl.) ¶ 9.) Indeed, plaintiffs acknowledge that "[a]ll class members . . . had the freedom to, and largely did, work for other entitles." (See Pls.' Reply at 5:27-28.) Consequently, a showing that any individual IC worked more than eight hours on any given day would not establish liability on the part of Capital in the absence of a further showing by such individual, in which the hours worked for each company are identified and counted separately.

Accordingly, for the above-discussed additional reasons, plaintiffs are not entitled to proceed on behalf of a class with respect to overtime, meal break and rest breaks claims.

//

### C. Conclusion as to Rule 23(b)(3)

Accordingly, irrespective of whether plaintiffs would be able to satisfy the four prerequisites set forth in Rule 23(a), plaintiffs have failed to show certification under Rule 23(b)(3) is proper.

## CONCLUSION

For the reasons stated above, plaintiffs' motion for class certification is hereby DENIED.

**IT IS SO ORDERED.**

Dated: June 7, 2017

MAXINE M. CHESNEY
United States District Judge